**Robert LEONARD, Plaintiff,**

v.

**USA PETROLEUM CORPORATION, et al.**

**Civ. A. No. H–92–2476.**

United States District Court, S.D. Texas.

Aug. 17, 1993.

J. Todd Shields, Houston, TX, for plaintiff.

Gregg C. Laswell, Houston, TX, James H. Berry, Jr., W. Paul Baskett, Los Angeles, CA, for defendant.

OPINION ON DISMISSAL

HUGHES, District Judge.

## 1. Introduction.

Robert Leonard, a petroleum trader, sued USA Petroleum Corporation and its sole shareholder, John J. Moller, for breach of contract. Because USA Petroleum and Moller did not consent to jurisdiction in Texas and do not do business in Texas, this case will be dismissed for lack of personal jurisdiction.

## 2. Background.

Leonard lives and works in Houston, Texas. USA Petroleum, a California corporation, owns and operates retail gas stations in several states and Puerto Rico. Leonard, a former employee and trader of petroleum products for USA Petroleum, knew that USA Petroleum had several Puerto Rican stations and that Idemitsu, a Japanese corporation, wanted to enter the American market. Through a friend, Leonard learned that Idemitsu's New York subsidiary was interested in purchasing the gas stations. Leonard contacted USA Petroleum to encourage it to sell its Puerto Rican stations to Idemitsu.

Leonard spoke several times with Moller about selling the Puerto Rican stations. Leonard contends that they orally agreed that Leonard would receive four percent of the gross sales price as a commission for arranging the sale. Moller claims that he agreed to pay a commission only if the sale price was above $45 million. After several months, USA Petroleum sold the Puerto Rican stations to Idemitsu for $40 million cash and assumption of an $8 million debt. Moller offered to pay Leonard a $500,000 finder's fee. Leonard rejected the offer, insisting that USA Petroleum owed him a four percent commission on the gross sale.

USA Petroleum filed a declaratory relief action in the United States District Court for the Central District of California, and the court dismissed it for lack of personal jurisdiction over Leonard. Two months after USA Petroleum filed its suit, Leonard sued USA Petroleum and Moller in Texas state court for breach of contract, quantum meruit,

abuse of process, economic duress, and civil conspiracy; the defendants removed on diversity. USA Petroleum and Moller have moved to dismiss this case for lack of personal jurisdiction.

### 3. Personal Jurisdiction.

■ Leonard must show that this court has personal jurisdiction over USA Petroleum and Moller. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir.1985). He argues that jurisdiction is proper in Texas because (a) USA Petroleum consented to jurisdiction by registering to do business in Texas and appointing an agent for service of process and (b) USA Petroleum and Moller had sufficient contact with Texas to satisfy due process.

### 4. General Jurisdiction by Consent.

■ A party may expressly or impliedly consent to jurisdiction in a state. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–05, 102 S.Ct. 2099, 2105–06, 72 L.Ed.2d 492 (1982). Leonard argues that, because USA Petroleum registered to do business in Texas and appointed an agent for service of process, it consented to jurisdiction in Texas, as a matter of law. Leonard argues further that USA Petroleum's consent obviates a due process inquiry.

Whether a foreign corporation's registration to do business in a state and appointment of an agent for service of process are acts that imply consent to personal jurisdiction in that state has been decided both ways. Some courts clearly have held that a corporation's registration to do business and appointment of an agent are factors having no significant weight in evaluating general personal jurisdiction. *See Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993); *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745 (4th Cir.), *cert. denied*, 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971). To the contrary, at least one court held that a corporation does consent to jurisdiction by designating an agent for service of process in the state. *See Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir.1990).

■ Consent requires a voluntary, reasoned act. A person consents to jurisdiction in a state if he is physically present in that state. *See generally Burnham v. Superior Court of California*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990). Many states have statutes that forbid service of process on a person who is in the state involuntarily, as by subpoena or fraud. *See Burnham*, 495 U.S. at 613, 110 S.Ct. at 2112. Texas itself also rejects personal jurisdiction procured by fraud. 3 Roy W. McDonald, Texas Civil Practice § 11.24 (1992); *see Brown v. Brown*, 520 S.W.2d 571, 574–75 (Tex.Civ.App.— Houston [14th Dist.] 1975, writ dism'd), *disapproved on other grounds*, 561 S.W.2d 172 (Tex.1978); *Cornell v. Cornell*, 402 S.W.2d 571 (Tex.Civ.App.—El Paso 1966), *rev'd on other grounds*, 413 S.W.2d 385 (Tex.1967); *but cf., Oates v. Blackburn*, 430 S.W.2d 400, 402–03 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Due process demands that presence imply consent only if it is voluntary.

In 1985, USA Petroleum applied for a certificate of authority to do business in Texas and appointed an agent for service of process, as required by state law. From 1982 to 1988, USA Petroleum maintained an office in Houston. Since 1988, USA Petroleum has not maintained an office, employed people, or conducted business in Texas. It does, however, have the authority to conduct intrastate business in Texas because it keeps its registration current. Leonard does not argue that this court has general jurisdiction over the defendants because of USA Petroleum's contacts with Texas; rather, he asserts that general jurisdiction is proper through USA Petroleum's registration. The issue, then, is whether USA Petroleum voluntarily consented to jurisdiction in Texas courts after 1988 because it had registered to do business in Texas and appointed an agent for service of process in 1985.

■ In Texas, foreign corporations must receive a certificate of authority to do business from the secretary of state to act prop-

erly as a corporation in *intrastate* business. Tex.Bus.Corp.Act Ann. art. 8.01(A) (1980 & Supp.1993). A foreign corporation does not, however, need a certificate of authority to conduct business in interstate commerce. U.S. Const. art. I, § 8; Tex.Bus.Corp.Act Ann. art. 8.01(B)(9); *see also Continental Supply Co. v. Hoffman,* 135 Tex. 552, 144 S.W.2d 253 (1940); *Killian v. Trans Union Leasing Corp.,* 657 S.W.2d 189, 192 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). A foreign corporation has the same rights and privileges as a Texas corporation. Tex.Bus. Corp.Act Ann. art 8.02 (1980 & Supp.1993). Once a foreign corporation is registered, it must appoint a registered agent who can be served with process. Tex.Bus.Corp.Act Ann. arts 8.08, 8.10(A) (1980).

Under Texas law, a foreign corporation runs a risk if it accidentally should engage in local commerce because a foreign corporation *must* get a certificate of authority to do business and *must* appoint an agent for service; it has no choice. If it does not, it cannot sue in Texas courts, and the state may fine it. *Id.* at 8.18. If a foreign corporation fails to register and to appoint an agent, the secretary of state becomes automatically the agent for service of process. *Id.* at 8.10(B). Under Texas law, foreign corporations will always have an agent for service of process. The state gives a foreign corporation merely the option of appointing its own agent for its convenience.

Leonard argues that because USA Petroleum appointed an agent for service of process, it consented to jurisdiction in Texas as a matter of law. Each case he relies on deals with a foreign corporation that had registered to do business in the particular state and had appointed an agent for service. *See Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.,* 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917); *Knowlton,* 900 F.2d 1196; *Prejean v. Sonatrach, Inc.,* 652 F.2d 1260 (5th Cir.1981); *Acacia Pipeline Corp. v. Champlin Exploration, Inc.,* 769 S.W.2d 719 (Tex.App.—Houston [1st Dist.] 1989, no writ); *Goldman v. Pre–Fab Transit Co.,* 520 S.W.2d 597 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). A careful reading of these cases, however, shows that either the

facts do not support Leonard's case or the cases are completely devoid of jurisprudential force. The courts have long held that a corporation's consent to jurisdiction by registering and appointing an agent is no more than "mere fiction." *Pennsylvania Fire,* 243 U.S. at 96, 37 S.Ct. at 345; *Smolik v. Philadelphia & Reading Coal & Iron Co.,* 222 F. 148, 151 (S.D.N.Y.1915). While using fiction shows that the law is malleable and imaginative, it does still have to have a foundation in reality and the facts.

A. *Pennsylvania Fire v. Gold Issue Mining*

In the late 1800s, the Missouri legislature tightened its grip on insurance companies. Since 1845, Missouri has required foreign insurance companies to register with the state to do business and appoint an agent for service of process; service of process was limited to suits brought on policies *contracted* for and *issued* in Missouri. In 1879, the legislature limited the amount of time an insurance company could be exposed to service of process to "so long as it shall have any policies or liabilities outstanding in this state." In 1885, the legislature further amended the statute so that residents and nonresidents could sue a foreign insurance company that did business in Missouri on any policy, whether or not that policy was issued in Missouri. The insurance company challenged the constitutionality of the 1885 amendment and lost. *Pennsylvania Fire,* 243 U.S. 93, 37 S.Ct. at 344.

There are two distinguishing facts that prevent this case from helping Leonard. First, Pennsylvania Fire Insurance did business in Missouri. It issued policies from a Missouri site to Missouri residents as well as to nonresidents. Pennsylvania Fire had agreed to insure an Arizona corporation for property in Colorado. Pennsylvania Fire was organized under Pennsylvania law, but it had registered to do business in Missouri. As the statute said, it was subject to service of process by residents or nonresidents on any policy, as long as it was doing business in Missouri.

Secondly, the Missouri statute stated that an insurance company consented to

jurisdiction only while it had liabilities outstanding in the state; therefore, if Pennsylvania Fire had not issued any policies in Missouri, it would not have been subject to Missouri jurisdiction.

Unlike Pennsylvania Fire in Missouri, USA Petroleum did not continually do business in Texas, nor does it have any outstanding liabilities in Texas. Pennsylvania Fire was a huge insurance company, issuing thousands of policies in Missouri. The Missouri legislature provided residents and nonresidents a forum in which to sue the insurance company on any policy, regardless of where the insurance company chose to issue it. Leonard does not fit these facts.

## B. *Knowlton v. Allied Van Lines.*

Mary Knowlton, a Minnesota resident, was hurt in a car accident in Iowa with an agent of Allied Van Lines, a Delaware corporation that was registered to do business in Minnesota. Knowlton sued Allied in Minnesota. The trial court dismissed for lack of personal jurisdiction over Allied because there was no connection between the action and business conducted in Minnesota and because designation of an agent for service of process was not consent to personal jurisdiction. The appellate court reversed, finding that Allied did consent to personal jurisdiction by appointing an agent for service of process. The appellate court declined to address Knowlton's argument that, even if jurisdiction by consent did not exist, Allied's business activities in Minnesota were sufficient to establish general jurisdiction.

The appellate court concluded that appointment of an agent for service of process is a form of general consent by which a defendant waives a due-process inquiry. The court relied on a Supreme Court case that listed many ways in which a defendant might consent to personal jurisdiction; the list did not include appointment of an agent for service of process. *Insurance Corp. of Ireland,* 456 U.S. at 703–05, 102 S.Ct. at 2105–06. The court of appeals presumed that the Supreme Court failed to list appointment of a registered agent as a means of consent because it took it "for granted." *Knowlton,* 900 F.2d at 1200.

A state-compelled waiver of due-process rights is never taken for granted.

## C. *Acacia* and *Goldman*

Two cases announce, with little reason or authority, that a corporation's registration to do business is an automatic consent to personal jurisdiction in Texas courts. *Acacia,* 769 S.W.2d at 720; *Goldman,* 520 S.W.2d at 598. They relied on the rationale that consent to personal jurisdiction in Texas courts is the price a foreign corporation must pay for the privilege of doing business in Texas and for enjoying the same rights and privileges that Texas corporations enjoy. *Acacia,* 769 S.W.2d at 720; *Goldman,* 520 S.W.2d at 598. Unless a foreign corporation actually does business in Texas, however, it cannot logically be enjoying the same privileges as active Texas corporations. A foreign corporation should suffer for the privilege of its presence in Texas only if it is present in Texas. The idea that a foreign corporation subjects itself to "potential" jurisdiction is fanciful.

## D. *Prejean v. Sonatrach*

Another case Leonard relies on does not hold that a corporation's registration to do business in Texas is, by itself, consent to personal jurisdiction in Texas. In a lengthy footnote on the last page of an opinion, a court of appeals mentioned, as dictum, that the district court on remand should consider the consent theory of jurisdiction and what effect it might ultimately have on diversity jurisdiction. *Prejean,* 652 F.2d at 1271.

## 5. *Due Process and Consent.*

■ By registering to do business, a foreign corporation only *potentially subjects* itself to jurisdiction; it does not subject itself to *potential jurisdiction.* The designation of an agent simply gives the company more efficient notice than service through the secretary of state, when service is otherwise proper. In complying with the Texas registration statute, USA Petroleum consented to

personal jurisdiction in Texas only if the jurisdiction were constitutional. *See Siemer,* 966 F.2d at 183; *Ratliff,* 444 F.2d at 746.

Due process requires that a nonresident have enough contact with the state to generate a reasonable expectation that the state may constitutionally wield its judicial power over him. *See generally International Shoe,* 326 U.S. 310, 66 S.Ct. 154. Service on a designated agent alone does not establish minimum contact. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 444–48, 72 S.Ct. 413, 417–20, 96 L.Ed. 485 (1952). Rather, registration to do business and appointment of an agent for service of process, especially when done to fulfill state law requirements, are only factors in the jurisdictional equation. Those acts do not constitute a general business presence or consent to suit in Texas courts on every matter. *Siemer,* 966 F.2d at 183; *Ratliff,* 444 F.2d at 748. A foreign corporation must have contact, other than mere compliance with Texas domestication requirements, to be subject to personal jurisdiction in Texas. *Ratliff,* 444 F.2d at 748. Reinforcing this conclusion is the tenet that domestication does not make a corporation a state resident for purposes of diversity. *See St. Louis & S.F.R. Co. v. James,* 161 U.S. 545, 16 S.Ct. 621, 40 L.Ed. 802 (1896).

When a foreign corporation does business in Texas, it benefits from and is protected by Texas laws; it enters into a "bargain" with the state. *See International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159; *In re Mid–Atlantic Toyota Antitrust Litig.,* 525 F.Supp. 1265, 1278 (D.Md.1981), *modified,* 541 F.Supp 62, *aff'd,* 704 F.2d 125 (4th Cir 1983). By doing business in Texas, a corporation avails itself of the protections of Texas, and in turn, consents to jurisdiction in Texas courts. Mere registration to do business or appointment of an agent for service of process is not availment, and without availment, there is no bargain—no social compact. If a corporation does not do business in Texas, it derives no benefit from Texas laws. Without a received benefit, there is no bargain, and without a bargain, there is no due process. A corporation cannot consent unless it is *first* afforded due process.

Since 1988, USA Petroleum has had no real contact with Texas. It is still registered to do business in Texas and has an agent for service of process. That is all. The idea that a foreign corporation consents to jurisdiction in Texas by completing a state-required form, without having contact with Texas, is entirely fictional. Due process is central to consent; it is not waived lightly. A waiver through consent must be willful, thoughtful, and fair. "Extorted actual consent" and "equally unwilling implied consent" are not the stuff of due process. *See,* Cound, et al., Civil Procedure, Ch. 2, p. 71 (3d Ed. 1981).

## 6. *Specific Jurisdiction by Contact.*

If a foreign corporation has contact with Texas, Texas courts have jurisdiction over that corporation, if and only if that contact is sufficiently meaningful to meet the minimum standard required by due process. Tex.Civ.Prac. & Rem.Code Ann. § 17.042 (1986). This rule of law has been truncated in the minds and jargon of lawyers to "minimum contact;" however, minimum contact does not mean "minimal" or "slight" contact. Minimum contact requires that a foreign defendant have at least enough contact with Texas to satisfy the minimum standards of due process. When a court finds that its exercise of jurisdiction comports with due process of law, it necessarily must first have found that a foreign defendant has the requisite level contact with Texas; therefore, a single due process inquiry is all that is required. *Placid Invest., Ltd. v. Girard Trust Bank,* 689 F.2d 1218, 1219 (5th Cir.1982). Due process demands that a nonresident have fair warning that the nature and extent of its contacts with the state may reasonably oblige it to submit to that state's judicial power. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). If USA Petroleum did not direct its activities toward Texas, it cannot have had fair warning that Leonard might successfully invoke a Texas court's power over it. *Id.*

Under the Texas long-arm statute, a foreign corporation does business in Texas if it (1) enters into a contract with a Texas resi-

dent and either party is to perform the contract, in whole or in part, in Texas, or (2) commits a tort in Texas. Tex.Civ.Prac. & Rem.Code Ann. § 17.042(1), (2) (1986). Leonard argues that Texas courts have specific jurisdiction over USA Petroleum because of an oral contract and torts related to the breach of that contract.

### A. Breach of Contract.

USA Petroleum asserts that it did not have a contract with Leonard, and even assuming that there was a contract, there are not sufficient contacts with Texas to find specific jurisdiction. Leonard claims that he found, located, and produced Idemitsu as a buyer while he was in Texas. He says he kept negotiations going and, while all the parties were in Texas, helped USA Petroleum to negotiate a letter of intent that became the final sale agreement of the Puerto Rican operation to Idemitsu. While Leonard may have done all of that and done it in Texas, he acted unilaterally.

It is USA Petroleum's own acts, not the acts of another, that establish the jurisdictional minimum contact with a state. See Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026 (5th Cir. 1983), cert. denied, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984). To be subject to jurisdiction in Texas, USA Petroleum must itself have acted to establish meaningful contact with the state. If USA Petroleum did not, on its own, conduct business in Texas, then it would violate due process to subject it to jurisdiction in Texas courts. Also, merely contracting with a Texas resident does not subject the nonresident to Texas jurisdiction. See Burger King Corp., 471 U.S. at 478, 105 S.Ct. at 2185.

Leonard is not able to produce a written contract, and all of the acts he describes were done on his own initiative. Texas courts cannot acquire jurisdiction over USA Petroleum by Leonard's unilateral acts. See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Leonard admits that USA Petroleum did not expressly ask him to do anything, but that he was willing to work for it. He also stated that, by inference, USA Petroleum asked him to negotiate the Idemitsu transaction. Neither Leonard's willingness to work nor his inference from USA Petroleum's act establishes minimum contact by USA Petroleum with Texas. To find minimum contact from these facts would be to compress due process into minimal contact, which the Constitution does not allow.

### B. Tort Injury.

Leonard claims that Texas courts have jurisdiction over USA Petroleum because USA Petroleum tortiously injured Leonard by abuse of the judicial process and conspiring to use duress, economic duress, and economic coercion. Leonard's tort claims, however, are dependent on the underlying contract claim. Leonard essentially argues that USA Petroleum injured Leonard by not honoring the oral contract and by filing a declaratory judgment suit in California. Personal jurisdiction over a foreign defendant is improper when it is based on tort claims arising from a contract dispute. Cf. Caldwell v. Palmetto Savings Bank, 811 F.2d 916, 918 (5th Cir.1987); Colwell Realty Invest., Inc. v. Triple T Inns, Inc., 785 F.2d 1330, 1335 (5th Cir.1986). The jurisdictional analysis must focus on whether USA Petroleum directed its action toward Texas. See Colwell, 785 F.2d at 1335.

At best, Leonard has shown that there may have been an oral contract, he unilaterally took action to further that contract, and USA Petroleum's refusal to pay injured him. These loose factual assertions, even when viewed favorably to Leonard, are insufficient to establish that USA Petroleum had minimum contact with Texas. To require USA Petroleum to appear in Texas courts violates its rights to due process under the Constitution.

### 7. Taxes.

Leonard asserts that USA Petroleum's tax payments in Texas suggest that it has minimum contact with Texas. USA Petroleum trades petroleum. It acquires the

right to possess a product in the future and then sells or trades that right. Even though USA Petroleum does not take possession of these products in Texas, the State of Texas taxes USA Petroleum on the sale of its positions. Texas cannot acquire jurisdiction over a corporation by taxing it for remote activities in interstate commerce. USA Petroleum will not be penalized for paying taxes.

### 8. *Conclusion.*

Due-process is the cornerstone of personal jurisdiction. Courts cannot be permitted to haul non-resident corporations across state lines on the fiction that they somehow consented to jurisdiction. USA Petroleum did not consent to jurisdiction in Texas and waive its rights to due process when it appointed an agent for service of process. Consent requires more than legislatively mandated compliance with state laws. Routine paperwork to *avoid* problems with a state's procedures is not a wholesale submission to its power.

USA Petroleum had only *minimal* contact with Texas, and Leonard has not suggested that Texas has an independent basis for jurisdiction over Moller, outside his ties to USA Petroleum. Because this court has no general or specific jurisdiction over USA Petroleum or Moller, this action will be dismissed.