Clemente JUAREZ and Ofelia Calzada–Juarez, Individually and on Behalf of the Estate of Jose Luis Juarez–Calzada, Appellants,

v.

UNITED PARCEL SERVICE de MEXICO S.A. de C.V., and Aaron Julian Carrizales–Aguirre, Appellees.

No. 13–94–313–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 10, 1996.

282

Jaime Saenz, Joseph A. Rodriguez, Rodriguez, Colvin & Chaney, Brownsville, Roel A. Saenz, Jr., McAllen, for appellants.

John W. Davidson, Lea A. Ream, Davidson & Troilo, San Antonio, Ferriel C. Hamby, Jr., Roger W. Hughes, Adams & Graham, Harlingen, for appellees.

Before SEERDEN, C.J., and CHAVEZ and RODRIGUEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

Clemente Juarez and Ofelia Calzada–Juarez, individually and on behalf of the estate of Jose Luis Juarez–Calzada, appeal from the trial court's dismissal of their lawsuit against United Parcel Service de Mexico, S.A. de C.V. (UPSM), and Julian Carrizales–Aguirre. By three points of error, the Juarezes complain that the trial court erred in sustaining the special appearances of UPSM and Carrizales–Aguirre and dismissing the present lawsuit. We affirm.

The underlying facts in this case are generally undisputed. Jose Luis Juarez–Calzada, the appellants' son, while walking across a street in Matamoros, Mexico, was struck and killed by a truck owned by UPSM and being driven by employee Carrizales–Aguirre while making deliveries for UPSM within the city of Matamoros. The Juarezes are Mexican citizens and residents of the state of Tamualipas, Mexico, as is defendant Carrizales–Aguirre. Defendant UPSM is a Mexican corporation.

The Juarezes filed the present lawsuit against UPSM and Carrizales–Aguirre in Cameron County, Texas, claiming personal jurisdiction by virtue of the defendants' general contacts with this State. UPSM and Carrizales–Aguirre specially appeared, contesting jurisdiction on the ground that they do not do business in Texas, nor do they have continuous and systematic contacts with this State, and that the assumption of jurisdiction over them by a Texas court would offend traditional notions of fair play and substantial justice. The trial court heard and sustained the special appearances and signed an order dismissing the lawsuit against UPSM and Carrizales–Aguirre, from which the Juarezes now appeal.

### The Record on Appeal

We first note that the Juarezes failed to provide this Court with a timely statement of facts from the hearing on special appearances. The trial court signed its order of dismissal on May 16, 1994, and, absent a motion for new trial, the record was due in this Court by July 15, 1994. *See* Tex.R.App. P. 54(a). Moreover, any request for extension of time to file the statement of fact was due fifteen days thereafter, on August 1, 1994. *See* Tex.R.App. P. 54(c). However, we did not receive the statement of facts, or a motion for extension of time to file the statement of facts, until September 2, 1994. Because this Court has no authority to consider an untimely statement of facts absent a timely motion for extension, we overruled that motion and have denied filing of the statement of facts. *See B.D. Click Co. v. Safari Drilling Corp.,* 638 S.W.2d 860 (Tex. 1982).

■ The general rule is that, when no statement of facts from an evidentiary hearing is filed, we must presume that the evidence supports the judgment. *Guthrie v. National Homes Corp.,* 394 S.W.2d 494, 495 (Tex.1965); *Antonio v. Marino,* 910 S.W.2d 624, 626 (Tex.App.—Houston [14th Dist.] 1995, n.w.h.); *Matthews v. Proler,* 788 S.W.2d 172, 174 (Tex.App.—Houston [14th Dist.] 1990, no writ). Texas Rule of Civil Procedure 120a(3) provides for the consideration of oral testimony at that hearing, along with affidavits and other discovery filed in the trial court. The trial court's order in the present case recites that the court considered "the pleadings, the Affidavits and the Court documents on file herein, and *other evidence* and briefs submitted by the parties." (emphasis added) Because we have no timely-filed statement of facts to show what other evidence the trial court considered in sustaining the present special appearances, we must generally presume that evidence was presented at the hearing to support the court's decision to sustain the special appearances.

However, even if we consider the largely undisputed evidence presented by the parties on appeal as the only evidence that was before the trial court, we would still find that the trial court's decision to sustain the special appearances was correct.

### General Requirements for Personal Jurisdiction

■ In order to comply with the Texas Long–Arm Statute and the federal constitu-

tional requirements of due process, the plaintiff must initially show that the defendant has established "minimum contacts" with the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *In re S.A.V.,* 837 S.W.2d 80, 85 (Tex.1992); *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 230 (Tex.1991). There must be a "substantial connection" between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. *Guardian Royal,* 815 S.W.2d at 230. When specific jurisdiction is asserted, the cause of action must arise out of, or relate to, the nonresident defendant's contacts with Texas. *Id.* When general jurisdiction is alleged, there must be continuous and systematic contacts between the nonresident defendant and Texas. General jurisdiction requires a showing of substantial activities by the nonresident defendant in Texas. *Id.*

■ Moreover, in addition to "minimum contacts," due process also requires that the assertion of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *S.A.V.,* 837 S.W.2d at 85; *Guardian Royal,* 815 S.W.2d at 231. The following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi,* 480 U.S. at 115, 107 S.Ct. at 1033-34; *Guardian Royal,* 815 S.W.2d at 231.

■ In addition, the unique burdens placed upon one who must defend himself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. *Asahi,* 480 U.S. at 115-17, 107 S.Ct. at 1034; *Guardian Roy-*

*al,* 815 S.W.2d at 229. Accordingly, when an international dispute is involved, the following factors should also be considered: (a) the unique burdens placed upon the defendant who must defend itself in a foreign legal system; and (b) the procedural and substantive policies of other nations whose interests are affected as well as the federal government's interest in its foreign relations policies. *Asahi,* 480 U.S. at 115, 107 S.Ct. at 1033-34; *Guardian Royal,* 815 S.W.2d at 229.

The evidence in the record before this Court, and presumably relied upon by the trial court at the defendants' special appearance hearing, shows that UPSM is wholly owned by UPS International, Inc., and is one of a number of corporations working under the "United Parcel Service" banner, that facilitate the delivery of letters and packages both internally within a state or nation, and internationally through agreements with other UPS corporations for pickups and deliveries at the borders. UPSM, though not licensed to do business in Texas, crosses into Texas some ten times a day to transfer packages at transfer points in Texas, located in El Paso, Laredo, Calexico, McAllen, and Brownsville. Because it must drive its trucks to a transfer point in Texas, UPSM has a permit from the Interstate Commerce Commission, has insurance while driving in Texas, and has an agent for service of process in Texas. In addition to these contacts for the purpose of transferring packages, UPSM also periodically buys and repairs its trucks in Texas. Aside from these, however, UPSM has no other significant contacts with Texas. Moreover, aside from his employment with UPSM, defendant Carrizales-Aguirre also has no significant contacts with Texas.

*Designation of an Agent and Consent*

■ The Juarezes claim, among other things, that UPSM's designation of an agent for service of process in Texas amounts to a general consent to jurisdiction in this state. We disagree.

The Fifth Circuit Court of Appeals has held that the designation of an agent for service of process, without more, does not

satisfy due process requirements for the exercise of general jurisdiction. *Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5th Cir.1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993); *see also Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745 (4th Cir.), *cert. denied*, 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971). A federal district court within Texas has further concluded that "registration to do business and appointment of an agent for service of process, especially when done to fulfill state law requirements, are only factors in the jurisdictional equation. Those acts do not constitute a general business presence or consent to suit in Texas courts on every matter." *Leonard v. USA Petroleum Corp.*, 829 F.Supp. 882, 889 (S.D.Tex.1993). The *Leonard* Court went on to explain that the designation of an agent for service is merely a convenience which gives the defendant more efficient notice than service through the Texas Secretary of State, through whom such process would otherwise be served absent designation of an agent by the defendant. *Id.* at 887–88; *see also* Tex. Civ. Prac. & Rem.Code Ann. § 17.044 (Vernon 1986).

We note that the Eighth Circuit Court of Appeals has consistently come to a different conclusion, holding that the designation of an agent for service of process in a particular state is sufficient to indicate consent to be sued in that jurisdiction, and therefore to confer personal jurisdiction upon the courts of that state. *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1396 (8th Cir.), *cert. denied*, 510 U.S. 814, 114 S.Ct. 63, 126 L.Ed.2d 32 (1993); *Ocepek v. Corporate Transport, Inc.*, 950 F.2d 556 (8th Cir.1991); *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199–1200 (8th Cir.1990).

Although not obligated to follow Fifth Circuit precedent, *see Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993), we consider the reasoning of the Fifth Circuit in *Siemer*, and of the federal district court in *Leonard*, to be persuasive. We agree that the designation of an agent for service of process in Texas does not amount to a general consent to jurisdiction, and is merely one of many factors to be considered in determining whether minimum contacts exist. Ac-

cordingly, we now turn to the other factors to be considered in determining whether due process supports the assumption of jurisdiction by a Texas trial court over UPSM and Carrizales–Aguirre.

### Minimum Contacts and Fair Play

█ It may be reasonable to conclude that the daily transfers made by UPSM drivers to Texas cities, as well as the other contacts such as the purchase and repair of trucks and the designation of an agent for service of process in Texas, are sufficient to confer general jurisdiction over the defendant UPSM. In a similar case, *Summit Machine Tool Manufacturing Corp. v. Warren Transport, Inc.*, 920 F.Supp. 722 (S.D.Tex.1996), a Mexican transport company making numerous deliveries of goods to cities on the Texas side of the border was found to have significant enough contacts with Texas to satisfy the general jurisdiction requirements of due process. *Id.* at 726. However, we need not decide that issue in the present case, because we conclude that an assertion of personal jurisdiction over either defendant would violate the second prong of due process analysis as being contrary to traditional notions of fair play and substantial justice.

Whether or not "minimum contacts" exist, the present dispute is wholly between Mexican citizens, and arises out of a tragic incident which occurred wholly within Mexico, with no asserted ties to any occurrences, instrumentalities or issues involving the State of Texas or any of its residents. Mexico has every interest in providing a remedy and a forum for the present dispute between its own citizens, and the State of Texas has no substantial interest in this dispute. In addition, the burdens upon UPSM and Carrizales–Aguirre are obviously significant in requiring them to defend themselves in a foreign country concerning an incident that will involve proof of Mexican law and evidence which must be gathered in Mexico and presented to a Texas court. Accordingly, the present assertion of jurisdiction over UPSM and Carrizales–Aguirre does not comport with traditional notions of fair play and substantial justice. *See Asahi*, 480 U.S. at 113–15, 107 S.Ct. at 1033 (California's interests in

the lawsuit were slight and did not support the extension of jurisdiction over the nonresident defendant where the dispute was between two foreign corporations concerning a transaction that occurred in a foreign country); *Guardian Royal*, 815 S.W.2d at 232–33 (although minimum contacts were otherwise satisfied, Texas had a diminished interest in adjudicating a dispute between two foreign insurance companies, such that fair play and substantial justice required dismissing for lack of personal jurisdiction).

The trial court correctly sustained the special appearances and dismissed the present lawsuit. We overrule points of error one through three.

The judgment of the trial court is AFFIRMED.