**800 ADEPT, INC., Plaintiff**

v.

**ENTERPRISE RENT–A–CAR, COMPANY, et al., Defendants.**

**No. 5:07CV57.**

United States District Court, E.D. Texas, Texarkana Division.

Feb. 11, 2008.

Nicholas H. Patton, Carly Slack Anderson, Robert William Schroeder, III, Patton Tidwell & Schroeder, LLP, Texarkana, TX, Joseph Brent Smith, Michael Charles Maher, Maher Guiley & Maher PA, Winter Park, FL, Lorrel A. Plimier, The Plimier Law Firm, Patricia L. Peden, Law Offices of Patricia L. Peden, Oakland, CA, Michael R. Holley, Lanier Law Firm, Houston, TX, for Plaintiff.

Damon Michael Young, John Michael Pickett, Damon Michael Young, Young Pickett & Lee, Texarkana, TX, Jeff Barron, Hongsun Yoon, Todd G. Vare, Donald E. Knebel, Barnes & Thornburg, Indianapolis, IN, Eric William Buether, Greenberg Traurig, Dallas, TX, Gerald L. Fellows, Kimberly A. Warshawsky, Greenberg Traurig, Phoenix, AZ, David Dean Bahler, Christopher Wayne Spence, Mark Thomas Garrett, Fulbright & Jaworski, Austin, TX, David J. Healey, Weil Gotshal & Manges, Houston, TX, Brett E. Cooper, Elizabeth S. Weiswasser, Weil Gotshal & Manges, New York, NY, Thomas B. King, Weil Gotshal & Manges, Redwood Shores, CA, Natasha H. Moffitt, Stephen M. Schaetzel, King & Spalding, Atlanta, GA, for Defendants.

## MEMORANDUM ORDER

DAVID FOLSOM, District Judge.

The above-entitled and numbered civil action was heretofore referred to United

States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The Report of the Magistrate Judge which contains her proposed findings of fact and recommendations for the disposition of such action has been presented for consideration. Defendant Patriot Communications LLC ("Patriot") filed objections to the Report and Recommendation. The Court conducted a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

Plaintiff 800 Adept, Inc. ("Plaintiff") accuses Patriot of infringing U.S. Patent Nos. 5,805,689 and Re 36,111 (collectively the "patents in suit"), both directed at a geographically mapped telephone routing method and system. Patriot moved to dismiss the First Amended Complaint filed against it, pursuant to Federal Rule of Civil Procedure 12(b)(3) for lack of proper venue. Patriot asserts it does not reside in this district for purposes of 28 U.S.C. § 1400.

## REPORT AND RECOMMENDATION

On January 7, 2008, the Magistrate Judge issued a Report and Recommendation, recommending Patriot's Motion to Dismiss for Improper Venue (Dkt. No. 171) be denied. On January 17, 2008, Patriot filed objections to the Report and Recommendation. Patriot objects to the Magistrate Judge's general finding that Plaintiff has met its burden of showing a *prima facie* case that Patriot has requisite contacts to support venue in this district. If the Court adopts the Magistrate Judge's recommendation and denies Patriot's motion, Patriot requests that the disputed factual issues be preserved for trial and that Plaintiff be required to prove conclusively the facts supporting venue.

## DE NOVO REVIEW

Even though Patriot relies on evidence showing the it does not actually route calls for its customers, Patriot does not rely on that issue in its objections given the conflicting evidence that was before the Magistrate Judge. Instead, Patriot assumes that it actually routes 1–800 calls for customers and asserts there is no evidence that it does so within this district. According to Patriot, the evidence shows that any alleged Patriot call routing services are performed entirely outside of this district, at facilities in California and Utah.

Patriot further objects to the Magistrate Judge's finding that Patriot has put its infringing products and services, including its Enhanced Routing Services, into the stream of commerce by marketing them nationally via its website and through sales representatives like Mr. Haney in Austin, Texas. According to Patriot, there is no evidence that its website is interactive or otherwise used to conduct business in this district. Patriot argues that to the extent that any of Patriot's customers choose to open store locations in this district or to the extent people in this district place calls to 1–800 numbers within this district is beyond Patriot's control and does not constitute purposeful contacts with this district by Patriot.

Finally, Patriot objects to the Magistrate Judge's findings that Patriot has purposefully taken actions knowing that its products and services will be used in an infringing manner within the Eastern District. According to Patriot, the evidence shows that any alleged infringement occurs outside of this district. Patriot asserts the evidence shows that Patriot's alleged call routing services are not Patriot's objections are without merit. In short, Patriot asserts its amenability to suit in this district does not depend on Patriot's own conduct or choices but depends entire-

ly on unilateral conduct and choices of others, over which Patriot has no control.

The Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. Therefore, the Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court. However, as alternatively requested by Patriot, the Court will preserve the disputed factual issues for trial and require that Plaintiff prove conclusively the facts supporting venue. Accordingly, it is hereby

**ORDERED** that Defendant Patriot Communications LLC's Motion to Dismiss for Improper Venue (Dkt. No. 171) is hereby **DENIED**.

### *REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

CAROLINE M. CRAVEN, United States Magistrate Judge.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, Defendant Patriot Communications LLC's Motion to Dismiss for Improper Venue (Docket Entry # 171) was referred to the Honorable Caroline M. Craven for the purpose of issuing a report and recommendation. The Court, having reviewed the relevant briefing, recommends the motion be **DENIED**.

### I. BACKGROUND

Plaintiff 800 Adept, Inc. ("Plaintiff") accuses Patriot Communications LLC ("Patriot") of infringing U.S. Patent Nos. 5,805,689 and Re 36,111 (collectively the "patents in suit"), both directed at a geographically mapped telephone routing method and system. Patriot moves to dismiss the First Amended Complaint filed against it, pursuant to Federal Rule of Civil Procedure 12(b)(3) for lack of proper venue. Patriot asserts it does not reside in this district for purposes of 28 U.S.C. § 1400.

Specifically, Patriot states it has never had any regular and established place of business of in this district, and it has not committed any acts of infringement in this district. In response, Plaintiff asserts, among other things, that Patriot conducts business in the Eastern District of Texas through sales of its products or services, including call routing services, to companies who have a national presence.

### II. STANDARD OF REVIEW

The patent venue statute, 28 U.S.C. § 1400(b), provides as follows:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. 1400(b). In determining venue in a patent case under § 1400(b), the district where a corporate defendant "resides" is defined by § 1391(c), which provides as follows:

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. *In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State,* and, if

there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c) (emphasis added).

In a patent infringement case, the Court looks to personal jurisdiction law as stated by the Federal Circuit. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed.Cir.2001). "Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Id.* The Texas long-arm statute authorizes the exercise of jurisdiction to the full extent permitted by the constitution. Because the statute is coextensive with the limits of due process, the inquiries collapse into a single question of whether jurisdiction comports with due process. *See id.* at 1360.

The Court begins with the standard articulated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In *International Shoe*, the Supreme Court held:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

*Id.* at 316, 66 S.Ct. 154. Minimum contacts can be demonstrated through facts supporting either specific or general jurisdiction over the defendant.

General jurisdiction exists when a defendant's contacts are unrelated to the cause of action but are "continuous and systematic" and "substantial." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction is not proper when the contacts are merely "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The minimum contacts test for general jurisdiction is more demanding and requires proof of more contacts than for specific jurisdiction. More contact is required because the forum state has no direct interest in the cause of action. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir.1987).

Specific jurisdiction exists when the non-resident defendant has minimum contacts with the forum such that maintaining suit does not offends "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154. Minimum contacts exist if the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174. The plaintiff has the burden to establish "minimum contacts." *Inamed*, 249 F.3d at 1360.

The "fair play and substantial justice" portion of the inquiry gives the defendant the opportunity to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174. The defendant bears the burden in the second prong "to demonstrate the presence of other considerations that render the exercise of jurisdiction unreasonable." *Inamed*, 249 F.3d at 1360.

The due process inquiry is comprised of a three-part test: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the

claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair." *Id.* at 1360, *quoting Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed.Cir.1995). The first two factors relate to the "minimum contacts" aspect of the due process inquiry, and the third factor relates to the "fair play and substantial justice" prong of the analysis. *Inamed*, 249 F.3d at 1360.

## III.  DISCUSSION

### A.  Patriot's evidence

Patriot attached to its motion to dismiss for improper venue the Declaration of Douglas S. Livingston and the Declaration of Wilson P. Haney.  According to Mr. Livingston, the President and Chief Operating Officer of Patriot, Patriot is a marketing company headquartered in Los Angeles, California.  Livingston Dec. at ¶¶ 2, 3. Patriot has small rented office spaces in Pennsylvania, Utah, and Austin, Texas. Aside from these small rented office spaces, all of Patriot's facilities are located in Los Angeles, and the vast majority of its business activities are conducted from its Los Angeles offices.  Livingston Dec. at ¶ 3.

Patriot's office in Austin is a small (approximately 500 square foot) rental space, staffed by a single employee, Mr. Wilson Haney.  Mr. Haney was formerly working for Patriot from his home in Colorado Springs, Colorado.  He wanted to relocate to Austin for personal and family reasons, so Patriot agreed to let him move his office from Colorado Springs to Austin.  Livingston Dec. at ¶ 4;  Haney Dec. at ¶¶ 2–5.

Mr. Haney moved to Austin in or about August 2004.  Aside from Mr. Haney, Patriot does not have any other employees or presence in the State of Texas.  Aside from Mr. Haney's small office space in Austin, Patriot does not have any offices, facilities or other places of business in the State of Texas.  Livingston Dec. at ¶ 5; Haney Dec. at ¶ 5.

Patriot has never conducted any business in the Eastern District of Texas and has never done anything or performed any act or service, within the Eastern District, in connection with providing services to any of its customers.  Livingston Dec. at ¶¶ 6–8;  Haney Dec. at ¶¶ 6–8.  Patriot is not and never has been incorporated in the State of Texas.  Livingston Dec. at ¶ 9.

Patriot does not own or maintain and has never owned or maintained any bank accounts, real property, leaseholds, warehouses, inventory, assets, or other property in the Eastern District of Texas.  To the extent that Patriot owns or maintains any such things in Texas, they are minor and solely associated with Patriot's small rented office space in Austin, outside the Eastern District of Texas. Livingston Dec. at ¶ 10.

Patriot has one customer that apparently has corporate offices in Lewisville, Texas, outside of Dallas, Texas, and another customer that apparently has corporate offices in Plano, Texas.  Patriot has never been to Lewisville or Plano (or any other place within the Eastern District) in connection with these or any other customers, and has not done anything or performed any act or service within the Eastern District in connection with these or any other customers.  Further, Patriot has only provided these customers with limited services that would not be at issue in this litigation and has never provided them with any services that would be at issue in this litigation.  Livingston Dec. at ¶ 8;  Haney Dec. at ¶ 8.

The statement in paragraph 21 of the First Amended Complaint that "each of the defendants provides geographic telephone call routing services that are and

have been used, offered for sale, sold and purchased in Texas, including in this Judicial District," is incorrect as applied to Patriot. Patriot does not perform any call routing services within this district or Texas. Patriot does not use any call routing services within this district or in Texas. Patriot is not a telephone company or a long distance carrier. Patriot does not operate any telephone lines within this district or Texas. Patriot does not operate or own any telecommunications equipment in this district or Texas and does not operate or own any equipment used in routing 1–800 calls from consumers within this district or Texas. Livingston Dec. at ¶ 11.

Patriot is involved in designing and developing telecommunications marketing applications for corporate customers, before the systems are activated or used. However, all of Patriot's design and development activities are done outside the State of Texas and outside of this judicial district, typically at Patriot's offices in Los Angeles and Utah. Livingston Dec. at ¶ 12.

According to Mr. Livingston, Patriot is a relatively small company with approximately 50 employees, most of which are based in Los Angeles. Livingston Dec. at ¶ 13. Participating in litigation in Texas would be extremely burdensome for Patriot. Most, if not all, of Patriot's documents and witnesses are located in Los Angeles. As far as Mr. Livingston knows, no documents or witnesses pertaining to this case are located in the Eastern District of Texas. Litigating in the Eastern District of Texas, and traveling to and from California to the Eastern District of Texas, would cause scheduling and other difficulties to Patriot. Livingston Dec. at ¶ 13. Patriot has never had anything to do with the Eastern District of Texas and would never have expected that it might be required to defend against claims in the Eastern District of Texas. Livingston Dec. at ¶ 13.

## B. Plaintiff's evidence

The plaintiff need only establish a *prima facie* case for personal jurisdiction. The court can make this determination without an evidentiary hearing based on the complaint, affidavits, and information obtained during discovery. *Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1333 (5th Cir.1986). According to Plaintiff, Patriot conducts business through sales of its products or services, including call routing services, to companies who have a national presence. Specifically, Plaintiff asserts Patriot provides or has provided services to customers such as Carpet One, Enterprise Rent–A–Car, Farmers Insurance Group, FedEx/Kinkos, Goodyear, Nextel (now Sprint Nextel), Pacific Sunwear, Planned Parenthood, and Washington Mutual, all of which have a national presence including a presence within the Eastern District of Texas. *See* Plimier Decl., Exhs. B–K. Plaintiff states Patriot sells its products and services to these companies with knowledge that those products or services will be used within the Eastern District of Texas. As an example, Patriot has routed telephone calls to suicide prevention hotlines run by the Kristin Brooks Hope Center, which is staffed in Alexandria, Virginia. *See* Plimier Decl., Exh. L at 2–3 and Exh. M.

Plaintiff further asserts it is irrelevant that the original sales of Patriot's products and services occurred in Austin, Texas or in Los Angeles and not within the Eastern District of Texas; what is important is that a caller in the Eastern District of Texas could, using Patriot's call routing service, dial 1–800–SUICIDE and be connected to a certified crisis center nearest the caller's location. *See id.* According to Plaintiff, such use is an infringement of 800 Adept's patents.

Plaintiff points out that Patriot admits that it has an office in Austin, Texas with an employee responsible for nationwide sales of Patriot's products and services. *See* Haney Decl., at 2. Plaintiff also points out that Patriot uses its Austin, Texas address to market itself as a national company. *See* Plimier Decl., Exhs.—P. Plaintiff further states that Patriot is registered to conduct business in the state of Texas, including within this district. *See* Plimier Decl., Exhs. Q–S.

## C. Discussion

### 1. Whether Patriot "resides" in the Eastern District of Texas

■ The issue is whether Patriot (1) "resides" in this district for purposes of § 1400, or (2) "has committed acts of infringement and has a regular and established place of business" in this district. 28 U.S.C. § 1400(b). In determining venue under the first section of § 1400(b), a corporate defendant resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). "In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to

reside in the district within which it has the most significant contacts." *Id.*

Texas has more than one judicial district. The question, then, is whether Patriot would be subject to personal jurisdiction in the Eastern District of Texas if the Eastern District of Texas were a separate state. After reviewing Patriot's contacts with the Eastern District of Texas, the Court finds Patriot's contacts fail to rise to the level sufficient to confer general jurisdiction. The Court now considers whether Patriot is subject to specific jurisdiction in this district.

Patriot's obvious contacts with the State of Texas have been in the Western District, where Patriot has a small rental office in Austin. The Austin office is staffed by Mr. Haney, who moved to Austin for personal and family reasons. Plaintiff asserts, however, that Patriot has registered to conduct business within the State of Texas, including within this judicial district, and has marketed itself as a national company with the aid of its Austin, Texas office.[1] Plaintiff has met its burden of showing a *prima facie* case that Patriot has the requisite contacts to support venue in this district, as the Court finds Patriot is subject to specific personal jurisdiction here for the reasons discussed below.

In *Akro*, the Federal Circuit set out a three-part due process test for specific personal jurisdiction. *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed.Cir.1995). There, the court required the following conditions for the proper exercise of per-

---

1. The fact that Patriot registered with the Texas Secretary of State does not, in and of itself, subject Patriot to jurisdiction or venue in this district. A party does not consent to personal jurisdiction merely by complying with a state's registration statutes or appointing an agent for service of process. *See, e.g., Leonard v. USA Petroleum Corp.,* 829 F.Supp. 882, 889 (S.D.Tex.1993); *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 181–

82 (5th Cir.1992). "Rather, registration to do business and appointment of an agent for service of process, especially when done to fulfill state law requirements, are only factors in the jurisdictional equation. Those acts do not constitute a general business presence or consent to suit in Texas courts on every matter." *Leonard,* 829 F.Supp. at 889. A foreign corporation must have contact to be subject to personal jurisdiction in Texas. *Id.*

sonal jurisdiction: (1) purposefully directed activities directed at the forum state, (2) a relationship of those activities to the cause of action, and (3) constitutional reasonableness of jurisdiction. *Id.* The first two factors correspond with the "minimum contacts" prong of the Supreme Court's *International Shoe* analysis, and the third factor corresponds with the "fair play and substantial justice" prong of the same analysis. *See International Shoe,* 326 U.S. at 316, 66 S.Ct. 154; *Inamed Corp.,* 249 F.3d at 1360.

Under the first prong of *Akro,* Patriot has put its infringing products and services, including its Enhanced Routing Services, into the stream of commerce by marketing them nationally via its website and through sales representatives like Mr. Haney in Austin Texas. *See* Haney Decl.; Plimier Decl., Exhs.—P. Patriot has purposefully taken this action knowing that those products and services will be used in an infringing manner within the Eastern District of Texas. For example, a caller within the Eastern District of Texas would be able to dial 1–800–SUICIDE or 1–800–CARPET–1 and be connected to a local suicide prevention center or Carpet One location using Patriot's routing services. *See* Plimier Decl., Exhs. C, L and M. The Court finds Patriot's contacts are more than a single act and are sufficient for a finding that Patriot has purposefully availed itself of the privilege of conducting business within the Eastern District of Texas. *See Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. 2174.

The second prong of the Federal Circuit's *Akro* test requires that the cause of action "arise out of or result from" the defendant's forum-related contacts. *Akro,* 45 F.3d at 1547. Patent infringement occurs when someone "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a).

The state of the patentee's injury is the location or locations at which the infringing activity directly impacts the patentee, including the place where the infringing sales are made and where infringing products or services are used. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1570–71.

According to Plaintiff, the use of Patriot's call routing services by those who dial 1–800–SUICIDE or 1–800–CARPET–1 from within the Eastern District of Texas and are routed to a local crisis center or Carpet One location is an infringement of 800 Adept's patents. Such alleged infringement by Patriot within the Eastern District of Texas is sufficient to subject Patriot to defend against a lawsuit brought within this district as a result of that infringement. *See Akro,* 45 F.3d at 1547; *Beverly Hills Fan,* 21 F.3d at 1570–71.

Patriot claims that Plaintiff's Exhibit A shows "at most" that Patriot "pioneered 'geo-code' routing in 1989." Plaintiff asserts, however, Exhibit A actually shows that Patriot's Enhanced Routing Services work in the following manner:

> A consumer dials a toll-free number, Patriot facilities identify the 10–digit number (ANI) the consumer is calling from. The consumers (sic) ANI is matched against [Patriot's] database of over 170 million residential and business phone numbers, the 10–digit telephone number is broken down into latitude and longitude coordinates. These coordinates are matched against [Patriot's] clients' database of locations. This process is done within milliseconds and the call is transferred to the closest location. This state-of-the-art technology means that Patriot can identify the closest location to within feet of the caller.

Plaintiff's mot., Exh. A. As urged by Plaintiff, this information, taken directly from Patriot's website, together with the fact

that Patriot markets this technology for use in routing telephone calls from callers within the Eastern District of Texas to service locations within the Eastern District of Texas, is sufficient to establish a *prima facie* case that 800 Adept's claims of infringement "arise out of or result from" Patriot's forum related contacts. *Akro,* 45 F.3d at 1547.

In addition, Plaintiff's Exhibits B–M support the fact that Patriot's customers, who use Patriot's Enhanced Routing Services, are national companies with a presence in the Eastern District of Texas. Each of these Patriot customers has a "service location" within the Eastern District of Texas. Patriot has failed to refute 800 Adept's showing that (1) these companies are Patriot customers, and (2) a caller within the Eastern District of Texas could dial 1–800–SUICIDE or 1–800–CARPET–1 and be connected to a local service location using Patriot's routing services.

Patriot's connections are not "random," "fortuitous," or "attenuated." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Instead, Patriot has "purposefully avail[ed] itself of the privilege of conducting activities within [this district], thus invoking the benefits and protections of its laws" as evidenced by the services it provides to its numerous customers within this District. *Id.*

Finally, the Court finds Patriot has not made a "compelling case" that the exercise of jurisdiction would be unreasonable and contrary to the concepts of fair play and substantial justice. Taken as a whole, the evidence shows that Patriot has sufficient contacts with the Eastern District of Texas; that Plaintiff's claims of infringement arise out of these contacts; and that a finding of proper venue is constitutionally reasonable. Plaintiff has thus met its burden of showing a *prima facie* case of prop-

er venue. Therefore, the Court recommends Patriot's motion be **DENIED.** Based on the foregoing, it is

**RECOMMENDED** that Defendant Patriot Communications LLC's Motion to Dismiss for Improper Venue (Docket Entry # 171) be **DENIED.**

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988).