Zack SHAHIN, Appellant,

v.

**DEYAAR DEVELOPMENT
CORPORATION USA,**
Appellee.

No. 01–11–00551–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 22, 2011.

Greg Wehrer, Eric John Cassidy, Squire Sanders & Dempsey, Houston, TX, Kevin Staloh, Magnolia, TX, Mike O'Brien, Mike O'Brien PC, Washington, TX, Richard Melamed, Melamed Law Firm PLLC, Bellaire, TX, for Appellant.

Carter Walker Dugan, Thomas C. Godbold, Fulbright & Jaworski L.L.P., Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Zack Shahin, appeals the trial court's order denying his special appearance. In two issues, Shahin argues that (1) the trial court cannot exercise long-arm jurisdiction over him because he is being held without trial in a foreign prison and, therefore, has no meaningful access to Texas counsel and (2) the trial court's exercise of jurisdiction over him does not comport with the due process standards of "fair play and substantial justice."

We affirm.

## Background

Shahin is an American citizen who has resided overseas for a number of years and is currently being held in prison in Dubai, United Arab Emirates ("U.A.E."). Beginning in 2004, Shahin worked as the CEO of Deyaar Development PJSC ("Deyaar Dubai"), a real estate development company based in Dubai. Appellee, Deyaar Development Corporation ("Deyaar"), is a Texas corporation with its principal place of business in Dallas, Texas, and is a wholly owned subsidiary of Deyaar Dubai.

This suit arises out of a real estate transaction in which Deyaar, under Shahin's direction, bought a parcel of undeveloped property located at 5000 Richmond Avenue (the "Richmond Property") in December 2007. Deyaar alleges that Shahin, in coordination with the other defendants,[1] "orchestrated" a "fraudulent scheme" surrounding the sale of this property for a greatly inflated price, which caused Deyaar "significant losses." In early 2008, Shahin resigned as the CEO of Deyaar Dubai, and he was arrested in Dubai in March 2008. Shahin asserts that he was held without the ability to communicate with the outside world for several weeks and without official charges being brought against him for over a year.

On October 4, 2010, Deyaar filed suit against Shahin and other defendants alleging fraud, conspiracy to commit fraud, statutory fraud in a real estate transaction,[2] breach of fiduciary duty and other duties, aiding and abetting breach of fiduciary duty, and violations of the Texas Theft Liability Act.[3] Deyaar also sought an injunction freezing Shahin's assets in the United States.

---

1. The other defendants include Elegant Development Group, Inc., Mowafac Jabri, American National Title Company, George J. Prappas, Kevin Staloch d/b/a Staloch Realty Services, Syed Rizwan "Ray" Mohiuddin, Ramez Building Development, Inc., and Rula Jabri. These parties are not parties to this appeal.

2. See Tex. Bus. & Com.Code Ann. § 27.01 (Vernon 2009).

3. See Tex. Civ. Prac & Rem.Code Ann. § 134.001–134.005 (Vernon 2011).

Deyaar pleaded that Shahin was a Texas resident who could be served either at the jail where he is being held in Dubai or at a property in Harris County. Deyaar further pleaded that all of the remaining defendants were Texas residents. Deyaar alleged that, at the time of the allegedly fraudulent real estate transaction, Shahin was Deyaar Dubai's CEO and the sole director of Deyaar, that he recommended approval of the transaction to the chairman of Deyaar Dubai, and that the transaction was undertaken in reliance on his recommendation and with his direct involvement. Deyaar further alleged that Shahin personally profited from the allegedly fraudulent real estate transaction in the form of real property transfers from entities related to the seller of the property to Larun Investments, LLC, an entity owned by Shahin, and in renovations to his home located in Houston, Texas, performed by entities related to the seller.

On October 14, 2010, Shahin filed a special appearance to challenge the trial court's exercise of personal jurisdiction over him. He argued that he was not a Texas resident as alleged by Deyaar and that "the exercise of jurisdiction in this proceeding would not comport with traditional notions of fair play and substantial justice" because he has been held captive in Dubai and, therefore, has "no practical access to his U.S. attorneys and there is simply no way for him to meaningfully defend himself in this lawsuit." Shahin asserted that he "has not lived in Texas since the early 1990s, and before that [he] only lived in Texas for two or three years." He alleged that he subsequently lived and worked overseas until his arrest in Dubai. He also alleged that his family fled Dubai for Texas without him in 2008 as a result of his problems with the government.

Regarding his imprisonment, Shahin asserted that he "does not have the confiden-tial access to U.S. counsel required by the Fourteenth Amendment" and that "it is unclear if or when ... Shahin's U.S. counsel ever will gain access" to him. He also stated that his communications channeled though the U.S. State Department would not afford the necessary confidentiality and that communications made over the prison phones are monitored by the government in Dubai. He further argued that Texas has no substantial interest in this suit because Deyaar Dubai is based in Dubai, and "[t]he fact that [it] has a hollow shell company organized in Texas is meaningless." Shahin also argued that, because Deyaar Dubai filed suit against him in Dubai months before Deyaar filed this suit in Texas, Texas is neither the most convenient nor the most efficient forum to resolve this dispute. The facts supporting Shahin's special appearance were provided and verified by Eric J. Akers, an attorney and "longtime friend of the Shahin family," because Shahin himself was not able to consult with his attorneys.

In response, Deyaar amended its petition to assert a more specific basis for the exercise of jurisdiction over Shahin. Deyaar asserted that the trial court had specific jurisdiction over Shahin because he "appeared in and has had multiple contacts with Harris County, Texas, in person, by email, and by telephone, for the purpose of personally benefitting himself by committing the fraudulent acts" alleged against him regarding the real estate transaction. Deyaar alleged that Shahin's liability "arises from or is related to those many contacts with, actions in, and actions directed to Harris County, Texas, [and] form a substantial basis for the legal claims asserted against him" in the suit. Deyaar also alleged that the trial court had general jurisdiction over Shahin because he "has established continuous and systematic contacts with Texas." Deyaar alleged that Shahin "has registered to vote in Texas,

has obtained a Texas driver's license, owns property in Texas, has traveled to Texas on numerous occasions, has resided in Texas, and has formed at least three companies in Texas."

Deyaar's response to the special appearance identified those contacts added in the amended pleading and also argued that the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice because Shahin has employed attorneys who currently defend him in matters pending in Dubai, he can confer with those attorneys freely and confidentially, and he has the opportunity to contact individuals outside the prison.

Deyaar supported these allegations with the affidavits of Wassef Serhan, an executive vice-president of Deyaar Dubai who was familiar with the details of the real estate transaction. He averred that Shahin "identified the 5000 Richmond Property as a target investment in the United States"; "spearheaded the effort to form [Deyaar] and purchase the 5000 Richmond [P]roperty"; "obtained and provided information to complete the corporate documentation of [Deyaar]"; "coordinated communications" with Deyaar Dubai and third parties in the formation of Deyaar; and "directed the purchase of the 5000 Richmond Property, including having primary responsibility for communicating with the seller and closing the transaction in December 2007." Deyaar provided information regarding at least two trips Shahin made to Houston in the course of forming Deyaar and acquiring the Richmond Property, and Serhan averred that he was aware of Shahin's making several other trips to Houston and that he was aware of multiple e-mails sent and received by Shahin in Houston. Deyaar also presented the affidavit of Adnan Tareen, a former officer of Deyaar Dubai, who also attested to similar facts.

Deyaar attached the affidavit of Saeed Mohamed Obaid Al Qatami, the current CEO of Deyaar Dubai, in which Al Qatami stated that he had been in contact with Shahin on four occasions following his arrest. In early 2009, he visited Shahin after he was transferred from jail to an area hospital for treatment of medical conditions, and Shahin appeared to be "comfortable and in good spirits," was accompanied by his mother and several friends, and used a laptop and cell phone in Al Qatami's presence. In April 2010, Al Qatami received a phone call Shahin placed from prison to congratulate Al Qatami on his appointment as CEO; in October 2010, he received another call Shahin placed from prison asking about Al Qatami's recent trip to Houston, which Shahin learned of despite being held in prison; and, in early 2011, he received another call from Shahin and stated, "I am not aware what prompted Mr. Shahin to call me on this most recent occasion." Al Qatami further stated, "At no time during my telephone conversations with Mr. Shahin did he express that he had any difficulty in contacting me. . . . Based on the foregoing, I am not aware of any restrictions on Mr. Shahin's ability to communicate with individuals outside Al Aweer Prison."

In another affidavit, Khalid Al Hamrani, a Dubai attorney representing Deyaar Dubai, stated that he was lead counsel for Deyaar Dubai in three civil cases filed against Shahin in Dubai courts and that he had an opportunity to observe Shahin and his counsel in Dubai. Al Hamrani averred that he had attended numerous hearings related to the Dubai suits, and, on each occasion, Shahin appeared in person, looking well-dressed and in good health, and was represented by Dubai counsel, who submitted briefs, cross-examined witnesses, and made arguments on Shahin's behalf. Al Hamrani stated that Shahin's

Dubai counsel "has also been freely permitted to confer with his client confidentially at these hearings" and "has never raised a complaint to the Dubai Courts that access to his client has been denied." Al Hamrani averred that Shahin's Dubai counsel visited him regularly in prison, and Al Hamrani was aware of the general visitation policies of the prison where Shahin is being held. He stated that the prison is "subject to constant judicial monitoring [pursuant to] the UAE Federal Criminal Procedures Code"; personal visits are allowed Sunday through Thursday from 8:00–11:00; visits from lawyers both foreign and local are allowed every Monday from 8:00–11:00; foreign lawyers must present "a legalized document proving that s/he is a certified legal practitioner"; and all visitors must arrange a visit by placing a phone call to the prison, which allows prison officials to seek permission for the visit from the prisoner and to confirm the time and date.

Deyaar also provided a certified copy of Shahin's Texas marriage license issued in 1991, a certified copy of a general warranty deed dated March 20, 2008, conveying property located in Harris County, Texas to Shahin and his wife, a certified copy of a general warranty deed conveying property in Harris County from Shahin, through an agent, to his wife, on June 4, 2010, Shahin's voter registration card dated October 9, 2007, a document from the Texas Department of Public Safety showing that Shahin was issued a driver's license on October 9, 2007, with an expiration date in 2014, and documents relating to Shahin's formation of two other companies not associated with Deyaar Dubai, one of which was Larun Investments, LLC, listing Texas addresses for Shahin.

Shahin himself subsequently filed an affidavit in support of his special appearance. He averred that he is an American citizen currently imprisoned in Dubai and that his family moved to Texas in 2008 after his arrest out of concern for their safety. He stated that he has lived in the Middle East since 1992, became the CEO of Deyaar Dubai in 2004, and subsequently resigned in 2008 after the government undertook a special audit of Deyaar Dubai. Shahin stated that he was subsequently restricted from leaving the country and was eventually arrested without formal charges. He averred that during the first several weeks of his imprisonment he was placed in solitary confinement in harsh conditions, suffered physical abuse, and was threatened until he agreed to sign documents in Arabic that he could not read. He stated that he was unable to contact his family, a lawyer, or the United States Consulate during that time and that he was subsequently transferred on several occasions.

Shahin's affidavit does not address the conditions of his current prison, although he did state that local law does not provide the same protections for attorney-client communications that are present in the United States; that the prosecutor has threatened to revoke his attorney-client privilege; that he can only communicate "with any degree of confidentiality" with his lawyer in person at the prison after making special arrangements to meet in a room or when he is taken to a hearing; that he is concerned the rooms "could contain hidden microphones, and that I or my attorneys could be made to reveal the content of those discussions"; that he has only limited access to a prison telephone and does not have a cell phone or computer access; that all calls from the prison phone are monitored and all packages or letters are opened and reviewed by prison officials; and that he would not be able to travel to Houston to participate in any hearings in person and would not be able to participate by telephone. Finally, he

stated that he has limited access to documents related to the claims against him in Texas, he has only been able to discuss the case with his U.S. attorneys twice, when the attorneys traveled to Dubai, and his health is failing. He also averred that, to the best of his knowledge, the majority of the relevant evidence and witnesses are located in Dubai and that an "identical case" is currently pending in Dubai courts. Shahin further averred that his Dubai counsel speaks limited English and has no experience with American law, so his Dubai counsel "can be of only limited assistance, if any, in assisting to defend the claims being asserted against [him] in the United States." Shahin also provided copies of letters to and from the U.S. Consulate attempting to address the conditions of Shahin's imprisonment through diplomatic channels.

Al Hamrani gave a second affidavit, in which he stated that Shahin's Dubai counsel has never complained that his ability to communicate confidentially with his client was compromised in some way, that his meetings and phone calls are recorded or monitored, or that he has been denied access to Shahin in prison. Al Hamrani averred that he had never witnessed any recordings of Shahin's conversations with his attorney being used as evidence against him in Dubai courts and that the U.A.E. Penal Code prohibits recording conversations conducted in a private place or through a telephone without the consent of the victim. A second attorney for Deyaar Dubai in the civil litigation pending against Shahin in Dubai averred that Shahin has also asserted that the Dubai court lacks jurisdiction over that case and provided a translated copy of Shahin's filing.

Following a hearing, the trial court denied Shahin's special appearance. The trial court did not issue any findings of fact or conclusions of law, and no reporter's record was taken.

## Personal Jurisdiction

### A. Standard of Review

 Whether a court has personal jurisdiction over a defendant is a question of law that we review de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 445 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Before determining the jurisdictional question, the trial court must frequently resolve questions of fact. *BMC Software*, 83 S.W.3d at 794. When, as here, a trial court does not issue findings of fact and conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied." *Id.* at 795. Under these circumstances, we presume that the trial court resolved all factual disputes in favor of its judgment. *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 246 (Tex.App.Houston [1st Dist.] 2005, no pet.) (citing *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002)).

 The plaintiff bears the initial burden of pleading jurisdictional facts sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). To establish jurisdiction over a nonresident defendant, the plaintiff must plead a "connection between the defendant['s] alleged wrongdoing and the forum state." *Id.* at 655; *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex.App.-Houston [1st Dist.] 2010, no pet.). In a tort case, the plaintiff must plead that the defendant committed a tortious act in Texas. *Kelly*, 301 S.W.3d at 659; *Touradji*, 316 S.W.3d at 23.

A nonresident defendant challenging the court's exercise of personal jurisdiction through a special appearance bears the burden of negating all grounds for personal jurisdiction alleged by the plaintiff. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007). The defendant can negate jurisdiction on either a factual or legal basis. *Kelly,* 301 S.W.3d at 659; *RSR Corp. v. Siegmund,* 309 S.W.3d 686, 699 (Tex.App.-Dallas 2010, no pet.). To negate personal jurisdiction on a factual basis, the defendant can produce evidence showing that it has no contacts with Texas, which the plaintiff may then counter with its own evidence. *Kelly,* 301 S.W.3d at 659. To negate jurisdiction on a legal basis, the defendant can establish that, even taking the alleged jurisdictional facts as true, "the defendant's contacts with Texas fall short of purposeful availment . . . or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id.; Siegmund,* 309 S.W.3d at 699.

Two requirements must be met before a Texas court can exercise personal jurisdiction over a nonresident defendant. First, the Texas long-arm statute must authorize the exercise of jurisdiction; and, second, the exercise of jurisdiction must comport with federal due process guarantees. *Coleman,* 83 S.W.3d at 806; *Tri-State,* 184 S.W.3d at 248.

Pursuant to the long-arm statute, Texas courts can exercise personal jurisdiction over a nonresident defendant who "does business" in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 2008); *BMC Software,* 83 S.W.3d at 795. The statute lists three activities that constitute "doing business" in Texas: (1) contracting with a Texas resident when either party is to perform the contract in whole or in part in Texas; (2) committing a tort in whole or in part in Texas; and (3) recruiting Texas residents for employment inside or outside of Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042. This list, however, is not exclusive, and the "doing business" requirement is limited only by the requirements of federal due process. *Koll Real Estate Grp., Inc. v. Purseley,* 127 S.W.3d 142, 146 (Tex. App.-Houston [1st Dist.] 2003, no pet.) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990)); *see CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig. proceeding). In practice, these two conditions are combined into one requirement of due process. *Wright v. Sage Eng'g, Inc.,* 137 S.W.3d 238, 247 (Tex.App.-Houston [1st Dist.] 2004, pet. denied); *see also Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C,* 815 S.W.2d 223, 226 (Tex.1991) ("[W]e consider only whether it is consistent with federal constitutional requirements of due process for Texas courts to assert *in personam* jurisdiction over Guardian Royal.").

With respect to personal jurisdiction, federal due process requires two things. First, the nonresident defendant must have purposefully established minimum contacts with the forum state such that the defendant could reasonably anticipate being sued there. *Glattly,* 177 S.W.3d at 446 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). Second, if the nonresident defendant has purposefully established minimum contacts with the forum state, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Id.* at 447 (citing *Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84).

## B. Shahin's Contacts with Texas

In his first issue, Shahin argues that the exercise of Texas long-arm jurisdiction over him is inconsistent with due process because he is being held in a foreign pris-

on without meaningful access to Texas counsel. In his second issue, Shahin argues that the trial court's exercise of jurisdiction over him does not comport with traditional notions of "fair play and substantial justice." Because we must analyze whether the exercise of jurisdiction over Shahin comports with traditional notions of fair play and substantial justice in light of his contacts with this State, we first analyze Shahin's contacts with Texas. *See Spir Star AG v. Kimich,* 310 S.W.3d 868, 878 (Tex.2010); *Guardian Royal,* 815 S.W.2d at 231.

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Coleman,* 83 S.W.3d at 806. A court may exercise specific jurisdiction over a nonresident defendant if (1) the defendant's contacts with the forum were purposeful and (2) the cause of action arose from or related to those contacts. *Id.* In a specific jurisdiction analysis, "we focus ... on the 'relationship among the defendant, the forum[,] and the litigation.'" *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 338 (Tex.2009) (quoting *Moki Mac,* 221 S.W.3d at 575–76).

If the cause of action does not arise from or relate to the defendant's contacts with the forum, a court may exercise general jurisdiction over the defendant if the defendant's contacts with the forum are " 'continuous and systematic,' a more demanding minimum-contacts analysis than specific jurisdiction." *Coleman,* 83 S.W.3d at 806–07 (quoting *Guardian Royal,* 815 S.W.2d at 228).

Deyaar has asserted that Shahin has multiple contacts with Texas. On appeal, Shahin does not contest these contacts; thus, we construe his argument to be that, in our analysis of whether a Texas court can exercise long-arm jurisdiction over him, these contacts are overwhelmed by the fact of his foreign imprisonment. However, in determining whether a nonresident defendant has sufficient contacts with Texas, we look to his contacts with Texas, not to contacts that might link him to another jurisdiction. *See id.* at 810 ("[A] trial court is bound by the facts and evidence before it. Rather than the quantity of contact with Texas as compared to other jurisdictions, we look to the nature and quality of those contacts. Thus, '[w]hether a defendant is involved in commerce in another state to a greater or lesser extent than in Texas should have no bearing on whether that defendant has subjected itself to the jurisdiction of Texas courts.'") (quoting *Am. Type Culture Collection, Inc. v. Coleman,* 26 S.W.3d 37, 54 (Tex.App.-Houston [1st Dist.] 2000) (O'Connor, J., dissenting from denial of en banc review), *rev'd,* 83 S.W.3d 801 (Tex. 2002)).

Deyaar argues that the trial court has specific jurisdiction over Shahin because he purposefully availed himself of conducting activities in Texas and the cause of action against him arises from those contacts. We agree. The allegedly fraudulent real estate transaction underlying Deyaar's claims involved a Texas corporation formed by Shahin, it involved real property located in Texas, and it was solicited, negotiated, and executed by Shahin in Texas. The jurisdictional evidence demonstrates that Shahin identified the Richmond Property as a target investment for Deyaar Dubai, that he formed Deyaar here in Texas to pursue the acquisition of that property, that he traveled here repeatedly in the course of the transaction, and that he executed the sale documents in Houston. Furthermore, Deyaar alleged that the personal profits to Shahin were received by Shahin through another entity

that he formed here in Texas and in benefit to his personal Texas real estate.

Shahin's contacts with Texas were purposeful, not random, fortuitous, or attenuated, and they were not the result of unilateral actions of a third party. Shahin himself sought out the Richmond Property as a potential investment for Deyaar Dubai, carried out the negotiations here, formed a Texas corporation to acquire the property, and executed the sale contract here. *See Retamco Operating*, 278 S.W.3d at 339–40. Furthermore, Shahin sought a benefit, advantage, or profit in Texas. He sought this investment on behalf of the company he served as CEO, and he also allegedly received personal benefits from this transaction here in Texas. *See id.* at 340.

Finally, there is a "substantial connection between [the defendant's forum] contacts and the operative facts of the litigation." *See id.* (quoting *Moki Mac*, 221 S.W.3d at 585). Deyaar alleges that Shahin orchestrated the purchase of Texas real property from a Texas resident by a Texas corporation formed by Shahin in the process of carrying out this transaction. Thus, we conclude that the trial court could have determined that it had specific jurisdiction over Shahin.[4]

## C. Fair Play and Substantial Justice.

■ In his first and second issues, Shahin argues that the trial court's exercise of long-arm jurisdiction over him does not comport with traditional notions of "fair play and substantial justice" because his imprisonment imposes an almost impossible burden on his ability to defend this suit in Texas, because he has no effective access to U.S. counsel, because Texas has little interest in adjudicating these claims, and because Deyaar's interest in obtaining convenient and effective relief is better served by the Dubai lawsuit.

■ In determining whether the exercise of personal jurisdiction over a defendant comports with traditional notions of fair play and substantial justice, we consider the defendant's contacts in light of: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental, substantive social policies. *Spir Star*, 310 S.W.3d at 878; *Guardian Royal*, 815 S.W.2d at 231. In analyzing the fourth and fifth considerations in cases where the interests of a foreign nation rather than a different state are implicated, we consider the interests of "other nations whose interests are affected by the assertion of jurisdiction." *Spir Star*, 310 S.W.3d at 878 n. 3 (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 115, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987)); *see also Pessina v. Rosson*, 77 S.W.3d 293, 298 (Tex. App.-Austin 2001, pet. denied) ("When the

---

4. Deyaar also points to the following contacts Shahin has with Texas, which, it argues, support the exercise of general jurisdiction over him: the presence of his family in Texas, Shahin's formation of two other corporations in Texas, his ownership of real property in Texas at the time of the fraudulent transaction, his former residency in this state, his registration as a voter and a licensed driver in this state, his frequent visits to Texas, and his numerous e-mail and phone contacts with Texas. In light of our holding that the trial court could properly exercise specific jurisdiction over Shahin, we do not need to analyze the sufficiency of these contacts to establish general jurisdiction over him. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002) (holding that defendant's contacts with forum can give rise to specific jurisdiction or general jurisdiction).

defendant is a resident of another nation, the court must also consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by a state court as well as the federal government's interest in its foreign relations policies.").

 Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the non-resident defendant has purposefully established minimum contacts with the forum state. *Spir Star*, 310 S.W.3d at 878. To defeat jurisdiction, the defendant must present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Id.* at 878–79 (quoting *Guardian Royal*, 815 S.W.2d at 231). When a Texas resident pursues a cause of action for harm committed within Texas, "the fairness considerations have little impact." *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 683 (Tex.App.-Fort Worth 2001, no pet).

### 1. The burden on Shahin

Shahin argues that the burden on him in defending this lawsuit in Texas "borders on impossibility." He argues that as a result of his imprisonment he does not have reasonable access to Texas counsel and his personal resources are diminished. He also argues that his communications with the outside world, including his attorneys, are monitored and not adequately confidential, that he would be unable to attend hearings or a trial in Texas, and that he does not have access to technology like e-mail, a cell phone, or a fax machine that would help alleviate the burdens imposed by the distance.

First, Shahin argues that the Fourteenth Amendment protects his right of access to the court in civil cases when a person is imprisoned. *See Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977) ("It is now

established beyond doubt that prisoners have a constitutional right of access to the courts."); *Lewis v. Casey*, 518 U.S. 343, 350, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996) (recognizing same right). He further argues that meaningful access to counsel is an important part of that meaningful access. *See Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir.1990) (per curiam) ("The opportunity to communicate privately with an attorney is an important part of that meaningful access [to the courts]."). However, the cases cited by Shahin address the right of prisoners to file suit while incarcerated, and they do not address the rights of an imprisoned defendant to resist suit on jurisdictional grounds, as Shahin is asking us to do here. Nor could we find any cases that presented access to counsel as a special factor to consider in our jurisdictional analysis. We also observe that civil litigants do not have an absolute constitutional right to counsel. *See Harris v. Civil Serv. Comm'n for Mun. Emps. of the City of Houston*, 803 S.W.2d 729, 731 (Tex.App.-Houston [14th Dist.] 1990, no writ). Thus, we consider the burdens on Shahin in light of his contacts with Texas. *See Spir Star*, 310 S.W.3d at 878.

Shahin himself put forward evidence that he has retained counsel in Dubai and that he is able to communicate with his Dubai counsel regarding legal matters pending against him there. Shahin did not present any evidence that his communications with his attorney are actually monitored or used against him in some way—he expressed only a concern that such "could" happen. Deyaar put forward evidence in the form of Al Qatami's affidavit that he has received multiple phone calls from Shahin while he was in prison, that Shahin has expressed no difficulty in contacting him, and that Shahin has been informed of Al Qatami's trip to Houston in

spite of his imprisonment. Al Hamrani, a Dubai attorney, averred that he has observed Shahin interact with his well-respected Dubai attorney, that neither of them has raised any complaints about the attorney's access to Shahin, and that he has never observed confidential conversations being used in court against Shahin.

Based on these facts, the trial court could have resolved the factual dispute regarding Shahin's ability to retain counsel by concluding that, although difficult, it was possible. Shahin already has at least one attorney in Dubai representing him and has also somehow obtained counsel to represent him in his special appearance here, including obtaining an affidavit from Shahin himself. Furthermore, the evidence demonstrates that Shahin can communicate with counsel in Dubai, and presumably, he could obtain counsel in Dubai who could communicate on his behalf with counsel in Texas. Shahin also has family members here in Houston to help him defend his interests. *See Tri–State,* 184 S.W.3d at 246 (holding that when trial court does not make findings of fact, we presume that it resolved all factual disputes in favor of its judgment).

Shahin argues that the burden on him in this case is greater than the burden on the nonresident defendant in *Guardian Royal,* which the supreme court determined would not comport with fair play and substantial justice. In *Guardian Royal,* the supreme court held that "[r]equiring Guardian Royal, an English insurer, to submit its dispute with its English insured to a foreign nation's judicial system is burdensome." 815 S.W.2d at 232. The court noted that all of the acts underlying the insurance policy in question occurred in England and that Texas had minimal interests in adjudicating the dispute. *Id.* at 232–33. Shahin's case is distinguishable from *Guardian Royal.* Shahin is a Unites

States citizen, has resided in Texas in the past, has conducted significant business in this state, and owns real property in this state, so requiring him to defend a suit in Texas is not the same as requiring a nonresident business to defend a suit in a foreign jurisdiction. Furthermore, unlike *Guardian Royal,* many of the events underlying Deyaar's cause of action occurred in Texas and involved a Texas corporation and Texas real property.

Finally, although Shahin himself lacks access to modern technology such as fax machines and computers, any counsel he might retain in Dubai would have access to those items on his behalf. *See Spir Star,* 310 S.W.3d at 879 (holding that distance alone is insufficient to defeat jurisdiction because "modern transportation and communication have made it much less burdensome for a party sued to defend [itself] in a State where [it] engages in economic activity"); *see also Fine v. Rubin,* 617 So.2d 86, 88 (La.Ct.App.1993) (upholding Louisiana court's exercise of jurisdiction over nonresident defendant who was incarcerated in Maryland and stating, "The trial court found that there was no undue burden on the defendant to litigate in Louisiana, because being incarcerated in Maryland she would be unable to attend a trial regardless where held. Although it might be possible to physically obtain the presence of the defendant in a Maryland court because she is incarcerated there, exercising personal jurisdiction over the defendant will not offend traditional notions of fair play and substantial justice.").

Thus, while we agree that the burden on Shahin would not be insignificant, this factor alone does not overwhelm our analysis of the remaining factors. *See also Michel,* 45 S.W.3d at 683 (holding that when Texas resident pursues cause of action for harm committed within Texas, "the fairness considerations have little impact").

### 2. Texas' interest in adjudicating the dispute

Shahin also argues that Texas has no compelling state interest in this case. He argues that Deyaar is a "hollow shell" for its parent corporation, Deyaar Dubai, and that no significant regulatory or property interests are at stake. We disagree.

This case was brought by a Texas corporation and involves alleged torts surrounding the sale of real property located in Texas. All of the other defendants are Texas residents. Thus, Texas has a considerable interest in resolving this dispute. See Retamco Operating, 278 S.W.3d at 341–42 ("Texas has an interest in resolving controversies involving real property within its borders...."); Control Solutions, Inc. v. Gharda Chems. Ltd., 245 S.W.3d 550, 562 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (recognizing Texas' interest in resolving dispute involving injury to Texas corporation); Wright, 137 S.W.3d at 253 (holding, in case where defendant was alleged to have committed tortious acts in Texas against Texas residents, that Texas "has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly those disputes in which the defendant allegedly committed a tort in whole or in part in Texas").

This factor weighs in favor of exercising jurisdiction in Texas.

### 3. Plaintiffs interest in obtaining convenient and effective relief

Shahin argues that Deyaar's interest in obtaining convenient and effective relief is better served by the Dubai lawsuit. However, Deyaar is a Texas corporation and the remaining defendants are all Texas residents. Furthermore, the property that was the subject of the allegedly fraudulent transaction is situated in Texas. Because Deyaar filed its suit here, we can presume that it does not find litigating in Texas to

be inconvenient or ineffective. See Waterman S.S. Corp. v. Ruiz, 355 S.W.3d 387, 427 (Tex.App.-Houston [1st Dist.] 2011, pet. filed) (quoting E.I. DuPont De Nemours & Co. v. Bailey, 986 S.W.2d 82, 84–85 (Tex.App.-Beaumont 1999, pet. dism'd w.o.j.)).

Finally, even if it would be more convenient for the plaintiffs to litigate in another forum, like Dubai, the issue of whether a particular forum is more or less convenient is a question for a forum non conveniens case, not a special appearance. See id. (citing Bailey, 986 S.W.2d at 85); see also Guardian Royal, 815 S.W.2d at 231 (recognizing that most considerations that nonresident defendant can raise to argue that jurisdiction is unreasonable "usually may be accommodated through means short of finding jurisdiction unconstitutional.... [A] defendant claiming substantial inconvenience may seek a change of venue.") (quoting Burger King, 471 U.S. at 477, 105 S.Ct. at 2185).

This factor weighs in favor of exercising jurisdiction in Texas.

### 4. Interests of other jurisdictions affected by assertion of jurisdiction

The final factor requires us to examine the interests of the international judicial system and the interests other jurisdictions, such as the U.A.E., have in furthering fundamental substantive social policies. Neither party asserts that there is another state of the United States with an interest in this litigation. Shahin argues that it would more properly be resolved in Dubai. However, Shahin and Deyaar's parent corporation, Deyaar Dubai, which is not a party to this litigation, are the only two residents of Dubai. The plaintiff and all of the remaining defendants are Texas residents. The property involved is located in Texas and most of the business transacted in acquiring the property was accomplished in Texas. Furthermore, Shahin

has also contested the jurisdiction of the Dubai courts.

Few of the obstacles Shahin complains of would be substantially lessened if we were to find that exercise of jurisdiction here would be unfair—he would still need to retain counsel who could evaluate evidence and witnesses in English and his communications would still be restricted and supervised to the same degree. Shahin does not identify any particular social policies of Dubai that would be better served by this court deferring jurisdiction.

Thus, we conclude that these factors weigh in favor of exercising jurisdiction in Texas.

Considering all of these factors in light of Shahin's contacts with Texas, we conclude that the Texas courts' exercise of jurisdiction in this case comports with traditional notions of fair play and substantial justice.

We overrule Shahin's second issue.

### Conclusion

We affirm the order of the trial court.