

NUMBER 13-10-00223-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

OCEANOGRAFIA, S.A. DE C.V.,                                    Appellant,

v.

MARIANA CALDERON HERNANDEZ, ET AL.,                    Appellees.

On appeal from the 103rd District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Justice Benavides

Oceanografia, S.A. de C.V. (appellant), appeals the trial court's denial of its special appearance on the grounds that the trial court lacks general jurisdiction to hear a suit brought against it by Mariana Calderon Hernandez et al., (appellees) for claims of negligence at sea.   We affirm.

## I.   BACKGROUND

This personal injury and wrongful death suit arises from an incident aboard a vessel operated by appellant in the Gulf of Mexico that eventually caught fire and sank. Appellant is a Mexican company headquartered in Mexico City.   Appellees are among hundreds of Mexican-national passengers (with the exception of one U.S. citizen) that were aboard the ship, who traveled to work on offshore oil wells.   One passenger perished in the tragic ordeal.   Following the rescue of surviving passengers, appellees filed a lawsuit in the 103rd District Court, Cameron County, Texas against appellant and other defendants, which alleged various claims of negligence.

Appellees alleged in their petition that appellant was amenable to the court's jurisdiction because it conducted substantial business in Texas, maintained a fleet in Texas, and operated jointly with a registered Texas business.   Appellees alleged that appellant's business dealings in Texas included:   millions of dollars worth of transactions with Texas-based ship company Con-Dive; purchase and service contracts with various Texas-based financial and oil and gas companies; and business meetings and recruitment of personnel in Texas by appellant.   Appellant was also involved in prior lawsuits in federal and state courts in Texas, where jurisdiction did not appear to be at issue.

The other defendants did not contest the trial court's jurisdiction over them. However, appellant filed a special appearance to object to the jurisdiction of the trial court on the grounds that appellant is not a resident of Texas and does not engage in business activities in the state. Appellant further argued that if the trial court assumed jurisdiction, it would offend the traditional notions of fair play and substantial justice. After briefing and argument, the trial court denied appellant's special appearance. This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(7) (West 2008).

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The issue on appeal is whether the trial court erred in denying appellant's special appearance. Issues of personal jurisdiction are questions of law and reviewed de novo. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). The plaintiff has the initial burden to "plead sufficient allegations to confer jurisdiction." *Id.* Once that burden is met, the defendant seeking to avoid the court's jurisdiction takes on the burden to negate "all potential bases for jurisdiction pled by the plaintiff." *Id.* When the lower court does not make findings of fact and conclusions of law in support of its ruling, "all facts necessary to support the judgment and supported by the evidence are implied." *Id.*

Non-residents are subject to the personal jurisdiction of Texas courts if: (1) jurisdiction is authorized under the state's long-arm statute; and (2) it comports with guarantees of the U.S. and Texas Constitutions. *Retamco Operating*, 278 S.W.3d at 337 (quoting *Moki Mac River Expeditions v. Dugg*, 221 S.W.3d 569, 574 (Tex. 2007)). Under Texas's long-arm statute, a non-resident defendant falls under the court's

3

jurisdiction if the defendant conducts business in the state. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007) (noting that the long-arm statute's language extends as far as the U.S. and Texas Constitutions permit, so courts should also rely on due process precedents as guides). Thus, the exercise of personal jurisdiction is constitutional when: (1) the non-resident defendant has established minimum contacts with the forum; and (2) the exercise of jurisdiction follows the traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

## III. ANALYSIS

### A. Pleading Allegations

Appellees contend that they met their initial burden of pleading sufficient jurisdictional allegations. We agree. In their original petition, appellees pleaded that appellant "does substantial business in Texas," and detailed appellant's role as a party to the negligence claims. We hold that appellees' pleadings were sufficient to satisfy this initial burden, and thus shifted the burden to appellant to negate all potential bases alleged. *See El Puerto de Liverpool v. Servi Mundo Llantero*, 82 S.W.3d 622, 629 (Tex. App.—Corpus Christi 2002, pet dism'd w.o.j.).

### B. Due Process

#### 1. Minimum Contacts

The first prong of a general jurisdiction analysis is to examine whether the foreign defendant has sufficient minimum contacts with Texas. *See PHC-Minden*, 235 S.W.3d at 166. Unlike specific jurisdiction, general jurisdiction is a type of personal jurisdiction that is exercised over a non-resident defendant in a suit not arising from or related to the

4

contacts with the forum. *Id.* When sufficient contacts exist between the foreign defendant and the State, "due process is not offended." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction is subject to a "dispute-blind" analysis—without regard to the nature of the claim—and involves a "more demanding minimum contact analysis." *PHC-Minden*, 235 S.W.3d at 168. However, the requisite level of minimum contacts must be substantial and involve a defendant who has been engaged in longstanding business with the forum state. *Id.* In a minimum contacts analysis, the threshold issue to determine is whether the foreign corporation has "continuous and systematic general business contacts" with the forum state. *Helicopteros*, 466 U.S. at 416. Continuous and systematic contacts are determined only on a "case-by-case basis" and should be examined for the quality of the contacts, rather than the quantity. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 810 (Tex. 2002).

While it is undisputed that appellant is a registered Mexican corporation, it had numerous contacts with Texas prior to the filing of this lawsuit. Appellant acknowledges these contacts, but argues that they are "too attenuated to constitute 'having a business presence.'" The first of its contacts involves millions of dollars worth of transactions with a former Houston-based ship chartering company, Con-Dive, during 2006-2008. The record shows that appellant and Con-Dive made various loans back and forth to help further each other's respective businesses. Appellant also—at some point during their relationship—hired and provided employees to Con-Dive and chartered vessels with Con-Dive. Second, appellant entered into several business contracts with Texas companies for a variety of financial and oil and gas needs. Third, the record shows that

5

appellant contracted with Houston-based financial-services company Mills & Stowell to help raise millions of dollars in third-party bond financing to help appellant further its business operations in the United States. Fourth, appellant entered into other contracts with Texas businesses, including: (1) the purchase of a percentage ownership of a large barge in Houston; (2) the purchase of crane services for its vessels; (3) the contracting and rental of oil and gas services and equipment; and (4) the contracting with a Woodlands-based company to purchase millions of dollars worth of equipment for appellant's business operations.

Using *Helicopteros* for support, appellant argues that the above-described contacts are isolated, one-time contracts and that the purchases of goods and/or services from Texas businesses are insufficient to support general jurisdiction. We disagree. The holding in *Helicopteros* is clear that, "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." 466 U.S. 408, 417 (1984). However, the contacts by appellant are more than mere purchases and related trips. In addition to purchases, appellant entered into sophisticated business transactions with Texas companies, prior to this lawsuit, for credit and financial purposes, as well as provided and recruited personnel to aid a Texas company's business efforts. We hold that these contacts, which are more than isolated, rise to a sufficient level that are continuous and systematic to satisfy personal jurisdiction.

## 2. Traditional Notions of Fair Play and Substantial Justice

The second prong of a general jurisdiction analysis requires the court to evaluate "whether the assertion of personal jurisdiction comports with fair play and substantial justice." *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d

223, 228 (Tex. 1991). To make this evaluation, the court is advised to look at several factors, including: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Id.* Because this case involves a defendant from another nation, rather than one from another state, we will not consider factors (4) and (5) in our analysis. *See Guardian Royal*, 815 S.W.2d at 234 n.17 (noting that in international disputes, a court need not consider the interstate judicial system's interest in obtaining the most efficient resolution of controversies or the shared interest of the several states in furthering fundamental substantive social policies in its analysis). Instead, we substitute the last two factors for two others—(1) the unique burdens placed upon the defendant who must defend itself in a foreign legal system and (2) the procedural and substantive policies of other nations whose interests are affected as well as the federal government's interest in its foreign relations policies. *See id.* at 229 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of Calif., Solano County*, 480 U.S. 102, 115 (1987)).

Any unique burden on appellant, a Mexican corporation, to defend itself in Texas's legal system is minimal. Appellant has defended itself in Texas's state courts and the federal legal system on at least three separate occasions prior to this present action. Further, the record shows that appellant's corporate representatives have travelled—and continue to travel—to Texas to conduct business. With this history, it is difficult to find that defending itself in Texas unreasonably burdens appellant. Additionally, Texas's interest in adjudicating this dispute to ensure that foreign companies doing business

7

within its borders—including raising capital, recruiting and exchanging personnel, and exchanging credit with Texas companies—are held accountable for wrongs committed, far outweighs any potential burden placed upon appellant to defend itself in Texas courts.

Appellees also have an interest in obtaining convenient and effective relief in Texas because the remaining defendants have submitted to the trial court's jurisdiction and important witnesses reside in the United States. Permitting the case to proceed against the three other defendants in Texas—and not against the appellant—divides the case. This would result in an inefficient adjudication of the dispute and potential unjust relief. Further, appellees have shown that of the seventy-one potential witnesses in this case, sixty-two of them live in the United States and only nine live in Mexico. Of the nine witnesses living in Mexico, two have already been deposed in the United States without issue. We also agree with the appellees that Cameron County is the most convenient venue for all involved due to its location. These facts support appellees' interests in obtaining efficient relief in one proceeding, rather than through piecemeal litigation in two different countries and by two different legal systems.

Mexico's procedural and substantive interests, as well as the United States' interest in foreign relation policies, are important to this analysis and must be examined on a case-by-case basis. *See Asahi*, 480 U.S. at 115 (informing courts to make a careful inquiry when asserting state-court jurisdiction over an international defendant). Mexico and the United States have a shared economic and free-trade interest through the North American Free Trade Agreement (NAFTA). *See* 19 U.S.C.A. § 3311 (West 2011). Appellees argue that the shared economic and trade relationships between Mexico and the United States carry a level of responsibility. We agree with this argument because

8

as the world economy evolves and international commerce increases, businesses based in different countries bear less burden and more responsibility to defend themselves across international borders, in circumstances where they have engaged in substantial economic activity. *Cf. McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957) (explaining that the expanding scope of state jurisdiction over non-resident defendants is attributable to the increase and evolution of commercial activity). Therefore, we find strong interests on both sides of the border in this case to enforce the trial court's personal jurisdiction over appellant.

Finally, appellant argues that our holding in *Juarez v. United Parcel Service de Mexico*, 933 S.W.2d 281, 289 (Tex. App.—Corpus Christi 1996, no writ) is analogous to the present case. We disagree. The *Juarez* Court faced a different dispute involving exclusively Mexican citizens without much evidence supporting jurisdiction in the United States. *See id.* at 285–86  While it is true that this case involves Mexican citizens and a Mexican company, it also involves U.S. companies and U.S. witnesses. As articulated by the decisions in *American Type* and *Asahi*, general jurisdiction analysis requires a case-by-case examination, and the facts in this case differ from those in *Juarez*, such as appellant's past and continuous history of sophisticated business dealings with Texas companies and individuals.

Therefore, based on the preceding factors, traditional notions of fair play and substantial justice are not offended to support the exercise of personal jurisdiction over appellant.

## IV. CONCLUSION

We hold that the trial court did not err in finding personal jurisdiction over appellant or in denying appellant's special appearance.   We affirm.


_____
GINA M. BENAVIDES,
Justice


Delivered and filed the
8th day of December, 2011.