

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| STEPHEN JOSEPH STANCIL and MUSTARD SEED CONSTRUCTION, LLC, | § § § § | No. 08-24-00365-CV |
| Appellants, | § | Appeal from the |
| | § | 395th District Court |
| v. | § | of Williamson County, Texas |
| MARK G. GILLAM, FRANK CANTONE, KEVIN GREGG, JOSEPH MICHAEL SMITH, and AARON SELE, | § § | (TC# 21-2054-C395) |
| Appellees. | § | |

**MEMORANDUM OPINION[1]**

Appellants, Stephen Joseph Stancil and Mustard Seed Construction, LLC, contacted Mark Gillam Enterprises (MGE), a California financial advisor corporation to find investors who would loan them money for the purchase of property in Texas. When the deal fell through, Appellants filed the underlying suit, including as individual defendants the founder, an employee, and clients of MGE. The Appellees, all nonresidents of Texas, filed special appearances. This interlocutory

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

appeal challenges the trial court's order granting those special appearances and dismissing Appellees from the suit.

## I. FACTUAL BACKGROUND

On July 1, 2021, Stancil contracted to buy 55 acres of land in Taylor, Texas from Emily Jo Simons for approximately $2.4 million. Stancil formed Mustard Seed Construction, LLC for the purposes of purchasing the property and developing it or re-selling it to a third-party developer. Closing was originally scheduled for October 28, 2021, but was extended by agreement to December 20, and then December 21, 2021.

As the December 20 closing date approached, Appellants still lacked the capital to purchase the property. To help him find the funding, Stancil's attorneys reached out to Appellee Mark Gillam, the founder and president of MGE, an investment adviser corporation located in California. Stancil says that Gillam represented that MGE was the agent for Appellees Kevin Gregg, Joseph Michael Smith, and Aaron Sele (the investors). According to Stancil's petition, he had numerous discussions with Gillam beginning on December 15, five days before the closing date, and they reached an agreement that the investors would loan Mustard Seed $2.7 million to purchase the property and in return, would receive interest on the loan and a 10% equity interest in Mustard Seed. The loan was to be secured by a deed of trust on the property. On December 16, 2021, Gillam formed MGE Venture I, LLC in Texas to, as he claimed, hold the investors' overall interest in the property.

Appellee Frank Cantone, an employee of MGE, communicated with and sent $2.7 million to the escrow agent in Texas through five separate wires. Those wires appeared to come from the individual accounts for Gregg, Smith, Sele, and a trust account held by Gillam. Appellants characterize the wiring of money as the Appellees' recognition of and performance of the contract

2

by placing the funds in escrow. Appellees, on the other hand, say it was nothing more than placing the funds with a third party to show good faith while they continued their due diligence in investigating the potential investment.

On December 20, 2021, Gillam informed Stancil that Appellees would not move forward with the investment because he learned of possible high levels of arsenic in the soil from historic cotton farming. Simons refused further extensions of the contract with Stancil and contracted to sell the property to Texas Multifamily Capital, LLC.

## II. PROCEDURAL BACKGROUND

Appellants filed suit against Appellees individually for breach of contract, breach of fiduciary duties, and fraud.[2] Appellees each filed a special appearance accompanied by an affidavit. In their affidavit, each testified that he lives in another state, is registered to vote there, has a drivers' license there, does not have an office or property in Texas, does not have a P.O. Box in Texas, does not own a vehicle registered in Texas, has not sued or been sued in Texas, has not been served with process in Texas, and did not consent to personal jurisdiction in the courts of Texas. Gillam also testified in his affidavit that "[t]he potential transaction was always on behalf of [MGE Venture I, LLC]" which he formed in Texas so that "*if* the transaction would later be consummated–though it never was–that the LLC's individual members would have ownership interests in the LLC, which would hold the LLC's overall interest in the property considered to be part of the potential transaction." In his affidavit, Cantone testified that his only connection to the potential investment was as an employee of MGE and that he "was not personally involved with negotiating it with any counterparty or even discussing it with anyone outside MGE or its clients."

---

[2] They also sued Simons, Texas Multifamily, Chris Epp, Husch Blackwell, Nikelle Meade, Michael Silver, MGE Venture I, LLC, and Andy Pettitte. The trial court entered summary judgment for Simons. The other parties were not affected by the trial court's order granting the special appearance and are not parties to this appeal.

3

Appellants filed a response to the special appearance, sought discovery, and requested that the trial court compel the discovery or continue the special appearance hearing until after they were able to obtain more discovery.

The trial court held a non-evidentiary hearing on all three motions (special appearance, motion to compel and motion for continuance) at the same time. The trial court granted the special appearances and made no express ruling on the other motions. The parties did not request, and the trial court did not make, findings of fact or conclusions of law.

This appeal followed. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (allowing for interlocutory appeals of special appearance rulings). Appellants argue that the trial court erred in (1) granting Appellees' special appearances and (2) refusing to grant a continuance to allow Appellants time to conduct jurisdictional discovery.

## III. PERSONAL JURISDICTION

### A. Standard of review

The existence of personal jurisdiction is a question of law that we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). However, in ruling on special appearances, the trial court must sometimes resolve questions of fact. If the trial court has not issued findings of fact and conclusions of law, all findings necessary to support the ruling are implied. *Bell*, 549 S.W.3d at 558. Factual findings relevant to the jurisdictional determination can be challenged for legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). In a legal sufficiency review, we must affirm if there was more than a scintilla of evidence to support the finding. *Id.* In a factual sufficiency review, we must affirm unless "the evidence is so weak or if the finding is so against the great weight and preponderance

4

of the evidence that it is clearly wrong and unjust." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

## B. Personal jurisdiction

Under the Texas long-arm statute, Texas courts can assert personal jurisdiction over a nonresident when the nonresident does business in the State of Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042. The statute lists specific acts that constitute doing business: entering into a contract with a Texas resident "and either party is to perform the contract in whole or in part in this state;" "commit[ing] a tort in whole or in part in this state;" or recruiting a resident for employment. *Id*. That list is not exclusive; it is "[i]n addition to other acts that may constitute doing business." *Id*. This broad language allows the Texas long-arm jurisdiction to reach as far as due process allows. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). The exercise of jurisdiction satisfies due process when the "nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts exist if the nonresident has "purposefully availed [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*.

When determining if a defendant has purposely availed himself of Texas's benefits and protections, we consider whether he purposefully directed his contacts into Texas such that he could "reasonably anticipate being haled into court here." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66–67 (Tex. 2016). we are guided by three principles in our inquiry:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be

5

purposeful rather than random, fortuitous, or attenuated . . . . Finally, the defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction.

*Moki Mac*, 221 S.W.3d at 575 (cleaned up).

There are two types of personal jurisdiction that can be asserted over a nonresident–general and specific. Texas has general jurisdiction over a nonresident defendant when his "affiliations with the [s]tate are so continuous and systematic as to render it *essentially at home* in the forum [s]tate." *Searcy*, 496 S.W.3d at 72 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014).

Specific jurisdiction exists when the defendant's contacts with the forum are the basis for the cause of action. *Searcy*, 496 S.W. 3d at 67. With specific jurisdiction, our primary focus is on the relationship between defendant, the forum, and the litigation. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010). "[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585. Unlike general jurisdiction, the *quantity* of the contacts is irrelevant; Texas can have jurisdiction based on only one contact if that contact is also the basis for the litigation. *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013).

Appellants argue only that the trial court had specific jurisdiction and not general jurisdiction over the Appellees. While our analysis is grounded in the facts related to the cause of action, we must nevertheless focus our analysis on the individual defendant's contacts with Texas related to the causes of action and not on the merits of the case. *Michiana*, 168 S.W.3d at 791–92; *TV Azteca v. Ruiz*, 490 S.W.3d 29, 35 n.1 (Tex. 2016); *Yahsi v. Visor Muhendislik Insaat Turizm Gida Ve Mekanik Taahhut Ticaret Ltd. Sirketi*, 651 S.W.3d 79, 94 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

6

The second prong of the jurisdictional analysis requires us to determine whether "the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *BMC Software Belg.*, 83 S.W.3d at 795. Once a court finds that a defendant has had minimum contacts with Texas and purposely availed itself of the benefits and protections of Texas, it is "[o]nly in rare cases" that jurisdiction is negated on fair play and substantial justice grounds. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991). It is the defendant's burden to show why the exercise of jurisdiction would be unfair and unjust:

> [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through application of the forum's choice-of-law rules. Similarly, a defendant claiming substantial inconvenience may seek a change of venue.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

## C. Challenging personal jurisdiction

The parties bear shifting burdens of proof in a personal jurisdiction challenge. *Kelly*, 301 S.W.3d at 658. The plaintiff initially has the burden to adequately allege a basis for jurisdiction. *Id.* Alleging an act that, if true, provides a cause of action in Texas is not sufficient, as we are concerned only with whether a defendant's acts constitute minimum contacts with Texas, not whether the defendant's will ultimately be liable for those acts. *Id.* at 660; *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 126 (Tex. App.—Dallas 2021, no pet.); *Silber v. Shallow Prod. Sols., Inc.*, 656 S.W.3d 500, 516 (Tex. App.—El Paso 2022, no pet.). The pleading requirement is "minimal" and "can be satisfied with an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas." *Gaddy v. Fenenbock*, 652 S.W.3d

860, 871 (Tex. App.—El Paso 2022, no pet.); *Brown v. Hamrick*, No. 05-23-00335-CV, 2025 WL 341898, at *4 (Tex. App.—Dallas Jan. 30, 2025, no pet.) (mem. op.); Tex. Civ. Prac. & Rem. Code Ann. § 17.042.

The burden then shifts to the defendant. He can challenge the trial court's personal jurisdiction over him by filing a special appearance. Tex. R. Civ. P. 120a(1). If the plaintiff did not meet his initial burden by alleging sufficient grounds of jurisdiction, all the defendants must do to negate jurisdiction is provide evidence that he does not live in Texas. *Kelly*, 301 S.W.3d at 658–59. But if the pleadings do sufficiently allege grounds for jurisdiction, the defendant must then negate all alleged jurisdictional grounds. *Id*. at 658. He can do this in two ways–factually or legally. He can present evidence disproving the factual allegations of his contacts with Texas in which case the burden shifts back to the plaintiff to provide his own evidence. *Id*. at 659. Or the defendant can show that even taking all jurisdictional allegations as true, they are not sufficient as a matter of law to establish jurisdiction. *Id*.

### D. Analysis

We now turn to whether the parties in this case met their respective burdens. At the outset, we note that some of the petition's "jurisdictional facts" allege contacts that are not relevant to the operative facts of this case. For example, Appellants asserted that Gillam and Cantone make frequent calls to Texas to seek clients, maintain relationships with existing clients, and seek, make, and manage Texas investments. They also alleged that some of Gillam and Cantone's clients are "high-net-worth individuals some of whom live and do business in Texas." Similarly, in their special appearance affidavits, all the Appellees denied contacts with Texas that would give the court *general* jurisdiction over them. For example, they denied living in Texas, owning property in Texas, being registered to vote in Texas, or having a drivers' license or registered vehicle in

8

Texas. Because Appellants argue that the trial court had *specific* jurisdiction over the Appellees, these allegations are not relevant. We focus instead on each Appellees' contacts as they relate to the operative facts of this litigation.

### (1) Mark Gillam

#### (a) Sufficiency of the allegations

Appellants alleged in their petition that in submitting the Uniform Application for Investment Adviser Registration to the SEC, "Gillam himself and 'Mark Gillam Enterprises' [] consented to the jurisdiction of the State and Federal Courts of the State of Texas." The application, which was attached as an exhibit to the petition, states that by signing it, Gillam was appointing the Texas Secretary of State as MGE's agent for service of process and agreed that service on that agent can be made by certified mail. But the entity applying for registration and consenting to service was MGE, not Mark Gillam as an individual. *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 82 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("Settled law *always* presumes that corporations exist as separate entities, and that corporate officers are separate from their corporation.") But, even if this consent did apply to Gillam individually, it is consent only as to designating an agent and method of service of process, not to the jurisdiction of Texas courts. *Juarez v. United Parcel Serv. de Mexico S.A. de C.V.*, 933 S.W.2d 281, 285 (Tex. App.—Corpus Christi–Edinburg 1996, no writ) ("designation of an agent for service of process in Texas does not amount to a general consent to jurisdiction, and is merely one of many factors to be considered in determining whether minimum contacts exist").

According to the petition's allegations, Gillam had the following contacts with Texas related to the operative facts of this litigation:

- Gillam, in his individual capacity and as an agent for Gregg, Smith, and Sele, "reached an agreement with Appellants through telephonic meetings and communications" by which Appellees would loan money to Mustard Seed to purchase and develop the property in return for a deed of trust securing the loan, interest at 6% per annum, and an equity interest (also described as a profits interest) in Mustard Seed.

- Gillam formed a corporation in Texas, MGE Ventures I, LLC, to hold the proceeds from the loan. Of the money wired to the Texas escrow agent, $400,000 was from a trust account in Gillam's name.

- Gillam committed torts by making fraudulent representations in connection with the alleged contract and interfering with the contracts Stancil had with Simons and the escrow agent.

We hold that these allegations met Appellants' initial minimal burden of pleading sufficient jurisdictional facts. *Shahin v. Deyaar Dev. Corp. USA*, 367 S.W.3d 274, 283–84 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (finding sufficient allegations based on allegations of a fraudulent real estate transaction involving Texas property and the formation of a Texas corporation).

### (b) Special Appearance–Fiduciary Shield

The burden then shifted to Gillam to negate these grounds of jurisdiction. In his special appearance affidavit, Gillam states that he is the founder and employee of Mark Gillam Enterprises and that he was contacted by Stancil about the potential investment. Gillam did not dispute that he participated in discussions with Stancil who was in Texas about the investment but argued that the fiduciary shield doctrine shielded him from the exercise of jurisdiction because all his negotiations were on behalf of MGE Venture I, LLC.

"The fiduciary shield doctrine protects a corporate officer or employee from the trial court's exercise of general jurisdiction when all of the individual's contacts with Texas were on behalf of the employer." *Morris v. Kohls-York*, 164 S.W.3d 686, 696–97 (Tex. App.—Austin

10

2005, pet. dism'd). The fiduciary shield "does not, however, protect employees from liability for their own tortious conduct committed while acting as an employee." *Morris*, 164 S.W.3d at 697; *see also Silber*, 656 S.W.3d at 517; *Tabacinic v. Frazier*, 372 S.W.3d 658, 668–69 (Tex. App.—Dallas 2012, no pet.); *Gen. Elec. v. Brown & Ross Int'l Distribs., Inc.*, 804 S.W.2d 527, 532–33 (Tex. App.—Houston [1st Dist.] 1990, writ denied); *Cagle v. Clark*, 401 S.W.3d 379, 390–91 (Tex. App.—Texarkana 2013, no pet.); *Booth v. Kontomitras*, 485 S.W.3d 461, 482 (Tex. App.—Beaumont 2016, no pet.); *Morris v. Powell*, 150 S.W.3d 212, 221 (Tex. App.—San Antonio 2004, no pet.). The existence of specific personal jurisdiction over a nonresident for acts done as an employee or corporate officer therefore depends on whether the plaintiff has alleged that the defendant committed a tort.

Appellants argue that Gillam is not shielded from the exercise of jurisdiction because they have alleged that he committed torts. Appellants pled that, in addition to breaching the contract, Gillam committed the following torts:

a. fraudulently representing to Plaintiffs the authority of Gillam and Cantone to act as agents for and on behalf of . . . Gregg, Smith and Sele, and enter into binding contracts on their behalf;

b. fraudulently representing to Plaintiffs, the contractual nature of their dealings and their intention to be bound and perform to induce Plaintiffs away from seriously negotiating and contracting with others;

c. fraudulently representing that . . . Gregg, Smith and Sele were to be participating in the contractual arrangements reached with Plaintiffs, and later claiming that . . . Gregg, Smith and Sele, were not participating, in part thus making promises with no intention of fulfilling them;

d. agreeing to the terms of a contract with no intention of being bound; and

e. falsely claiming that they were attempting to terminate their contract they had with Plaintiffs because of the "potential" of arsenic in the soil on the Texas

11

Property, when that potential had been known to the MGE Defendants actually and/or constructively, for weeks, was a minimal, immaterial problem if it was a problem at all; [and]

. . . .

[f]. instructing the Texas-based escrow agent to return their funds thereby making closing on December 20, 2021, impossible.

A party cannot avoid the fiduciary shield and obtain jurisdiction over an individual by artfully pleading a contract action as a tort. *Abruzzo, LLC v. Walesa*, No. 04-12-00747-CV, 2013 WL 1225626, at *5 (Tex. App.—San Antonio Mar. 27, 2013, no pet.) (mem. op.) (finding that the defendant did not commit torts allowing for specific jurisdiction because "the factual basis for the tort causes of action . . . are alleged breaches of the provisions contained in the Purchase Agreement" and because the alleged damages were "the subject matter of the contract."). In determining whether Appellants pled that Gillam committed a tort, we look at the conduct that forms the basis of the cause of action and not the cause of action itself:

> If the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

*Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). We also consider the plaintiff's loss. "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Id*. Some of the torts alleged by Appellants, such as claiming false reasons to terminate the investment agreement and demanding the return of the funds, are contract claims simply recast as tort claims. The fiduciary shield applies to those claims.

However, claims of fraudulent inducement are properly brought as tort claims, even when a contract is made as a result. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors,*

12

*Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Id*. at 48. Therefore, the fiduciary shield does not apply to protect Gillam from jurisdiction over allegations that he made fraudulent representations to induce Appellants to enter a contract or that he never intended to fulfill his contractual obligations. Gillam's affidavit is silent about this basis of jurisdiction, and he produced no evidence negating the grounds for jurisdiction pertaining to these tort claims. Gillam failed meet his burden to produce evidence to negate the grounds for jurisdiction over him for the fraudulent inducement claims. He also failed to meet his burden regarding the second jurisdictional prong by showing any compelling reason why the exercise of jurisdiction over him would not comport with fair play and substantial justice. *Guardian Royal Exch. Assur.*, 815 S.W.2d at 231; *Fed. Corp., Inc. v. Truhlar*, 632 S.W.3d 697, 726 (Tex. App.—El Paso 2021, pet. denied).

The burden then returned to Appellants to provide evidence defeating the fiduciary shield for the remainder of the claims by showing his actions were not on behalf of MGE. Although allegations are sufficient for a plaintiff to meet his initial burden to establish jurisdiction, they are not once the defendant submits evidence negating the grounds for jurisdiction. To meet their burden, Appellants had to produce evidence. *Kelly*, 301 S.W.3d at 659. Appellants filed a response to the special appearance that included many of the same allegations and arguments as the petition, but no evidence.[3]

Because Appellants pled that Gillam committed torts for which he could be individually liable and Gillam produced no evidence otherwise, there was not more than a scintilla of evidence to support the trial court's order granting his special appearance as to those claims. We reverse the

---

[3] The response, which was not sworn, is not evidence. *Yahsi*, 651 S.W. 3d at 88.

trial court's order dismissing the fraudulent misrepresentation claims against Gillam and affirm the order for all other claims against Gillam.

### (2) Frank Cantone

#### (a) Sufficiency of the allegations

In their petition, Appellants alleged that Cantone is employed by Gillam and provides financial adviser services "through the trade name 'Mark Gillam Enterprises.'" They claimed that Cantone, like Gillam, was engaged in negotiations with Stancil and made fraudulent misrepresentations. In addition, they asserted that Cantone wired a total of $2.7 million to an escrow agent located in Texas. Like with Gillam, we find that these allegations were sufficient for Appellants to meet their initial burden of alleging that Cantone conducted business in Texas.

#### (b) Special Appearance – Fiduciary Shield

Cantone, like Gillam, also relied on the fiduciary shield. In his special appearance, Cantone argued that "there are zero allegations that [he] was involved outside of his connection to his employer." Unlike Gillam, Cantone also denied being part of the negotiations or discussions. In his affidavit, he stated:

> My only conceivable connection to the matters at issue in this lawsuit is that I am an employee of Mark Gillam Enterprises, Inc. ("MGE"), a corporation organized in the State of California, which provides portfolio management and advisory services for its clients based on their individual goals, objectives, time horizon and relative risk tolerance. While I was aware that the potential transaction was being considered, I was not personally involved with negotiating it with any counterparty or even discussing it with anyone outside MGE or its clients; my awareness of the aborted transaction arose only out of my work as an employee for MGE and its clients. I hold no ownership stake in MGE, nor would I have been a member of MGE Venture I, LLC.

Cantone not only negated the grounds for jurisdiction over the contract claims by raising the fiduciary shield, but he also negated the grounds for jurisdiction over the tort claims with his

14

testimony that he was not part of the discussions where any alleged fraudulent representations would have been made. The burden then shifted back to Appellants, and as noted above, they failed to produce any evidence in response. Thus, Appellants did not meet their burden to produce any evidence showing that Cantone acted as an individual, not an employee, or that Cantone communicated with the Appellants such that he could have committed the tort of fraudulent misrepresentation for which he could be personally held liable.

The evidence was therefore sufficient to support the trial court's implied findings that Cantone's contacts were in his capacity as an employee and could not support jurisdiction against him as an individual. The trial court did not err in granting his special appearance.

### (3)   Gregg, Smith, and Sele[4]

The Appellants do not allege that Gregg, Smith, or Sele themselves had any contacts with Texas regarding the operative facts of this suit. Nonetheless, Appellants alleged that the contacts of Gillam and Cantone should be imputed to them because Gillam and Cantone acted as their agents. Appellants are correct that the acts of an agent can be imputed to the principle to give a court personal jurisdiction over the principal, but they have failed to show that Gillam and Cantone were agents of Gregg, Smith, and Sele.

In an agency relationship, the principal has "the right to dictate the means and details of the process by which the agent will accomplish the task." of the agent. *Olympia Capital Associates, L.P. v. Jackson*, 247 S.W.3d 399, 413 (Tex. App.—Dallas 2008, no pet.). This is distinguishable

---

[4] Appellants refer to these defendants collectively as the MGE Money Sources. Appellees argue that this is improper because "each defendant's contacts must be assessed individually." It is true that a plaintiff cannot aggregate the contacts of multiple defendants to show that they are all subject to jurisdiction. *See, e.g. Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980). Appellants, however, were not aggregating the contacts of Gregg, Smith, and Sele, but were discussing them as a group because the jurisdictional facts and arguments for each are identical. In the interest of efficiency, we also address them together.

15

from the relationship with an independent contractor, in which "one has the right to control the end sought to be accomplished, but not the means and details of how it should be accomplished[.]" *Id.* This distinction is important in the personal jurisdiction context "because an agent's contacts with the forum are attributable to the principal, but the contacts of an independent contractor are not." *Id.* Therefore, the nature of Gillam and Cantone's relationship with Gregg, Smith, and Sele was critical. If Gillam and Cantone were acting as agents and not independent contractors, the trial court could have jurisdiction over Gregg, Smith, and Sele based solely on Gillam and Cantone's contacts with Texas. *Atiq v. CoTechno Group, Inc.*, No. 03-13-00762-CV, 2015 WL 6871219, at *5 (Tex. App.—Austin Nov. 4, 2015, pet. denied) (mem. op.) ("When an agent negotiates a contract for its principal in Texas, it is the principal who does business in this state, not the agent.") (quoting *Mort Keshin & Co. v. Houston Chronicle Publ'g Co.*, 992 S.W.2d 642, 647 (Tex. App.–Houston [14th Dist.] 1999, no pet.)); *see also Peter v. Stern*, No. 05-20-00021-CV, 2020 WL 4783192, at *4 (Tex. App.—Dallas Aug. 18, 2020, pet. denied) (mem. op.).

While allegations of *contacts* with Texas are sufficient for a plaintiff to meet its initial burden to establish jurisdiction, allegations of an *agency relationship* are not by themselves sufficient to establish that a court has jurisdiction over a nonresident because of an agent's acts. *Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d at 83–84 (characterizing agency theory as an exception to the general rule that the Plaintiffs initial burden is met by only alleging grounds for jurisdiction); *ShopStyle, Inc. v. rewardStyle, Inc.*, No. 05-19-00736-CV, 2020 WL 4187937, at *15 (Tex. App.—Dallas July 21, 2020, no pet.) (mem. op.) (same). We cannot presume the agency relationship exists and the party relying on the relationship–in this case, Appellants– has the burden to prove an agency relationship. *Johnson v. Kindred*, 285 S.W.3d 895, 901 (Tex. App.—Dallas 2009, no pet.); *Yahsi*, 651 S.W.3d at 95–96; *Jackson*, 247 S.W.3d at 412–13.

Appellants alleged in their petition that Gillam and Cantone had actual and apparent authority to act for Gregg, Smith, and Sele, but at no point did they produce any evidence that Gregg, Smith, and Sele had the right of control required in an agency relationship.[5] *Schott Glas v. Adame*, 178 S.W.3d 307, 317 (Tex. App.—Houston [14th Dist.] 2005, pet. denied), abrogated on other grounds by *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163 (Tex. 2007) ("Because appellees presented no evidence that Schott Glas controlled the means and details of Merino's work, the evidence is legally and factually insufficient to support the trial court's implicit finding that Merino is Schott Glas's agent.").

Because Appellants did not meet their burden to prove the agency relationship, we hold that the evidence was sufficient to support the trial court's implied finding that Gillam and Cantone's contacts with Texas could not be imputed to Gregg, Smith, and Sele. Because Gregg, Smith, and Sele did not have minimum contacts with Texas related to the operative facts of this suit, the trial court did not err in granting their special appearances.

Appellant's first issue is sustained as to claims of fraudulent representation by Gillam but overruled as to the other claims against Gillam and all claims against Cantone, Gregg, Smith, and Sele.

## IV. DENIAL OF CONTINUANCE

In their second issue, Appellants contend that the trial court erred in denying a continuance so that they could obtain discovery and be able to provide the evidence that they needed to establish jurisdiction.

---

[5] However, even if allegations of agency were sufficient, at least initially, Appellants contradicted their allegation of agency by also claiming that Gillam and Cantone "maintain[ed] discretionary control" over Gregg, Smith, and Sele's personal accounts. As explained above, in an agency relationship, the agent does not have discretionary authority; instead, the principal controls the means and details of the agent's acts.

### A. Right to jurisdictional discovery

A party is entitled to discovery that is "essential to prove at least one disputed factor that is necessary to the plaintiff's proposed theory or theories of personal jurisdiction" even if the discovery is also relevant to the merits of the case. *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 677–78 (Tex. 2022). Indeed, "the results of discovery processes" are one of the things that a trial court is to consider when ruling on a special appearance. Tex. R. Civ. P. 120a(3).

Appellants served discovery requests on Gillam, Cantone, and Smith. Appellants represent that the responses were mostly objections on the basis that a special appearance was pending. Appellees on the other hand, assert that they did respond to requests that related to the alleged grounds of jurisdiction. They claim to have provided more than 700 pages of discovery[6], including responses from Gillam and Cantone

> . . . that, among other things, related to their employment by [MGE] and the work they performed in connection with the matters at issue, and MGE Venture I, LLC produced relevant, responsive documents and communications that were statements or communications made in connection with (a) the proposed transaction, (b) MGE Venture I, LLC and its membership and creation, (c) the money that MGE Venture I, LLC moved into a trust account to show good-faith interest in considering the potential transaction, and (d) the due diligence MGE Venture I, LLC reviewed and which ultimately caused MGE Venture I, LLC to discontinue moving forward with the proposed transaction.

The record also indicates that Appellees responded to some requests. The responses attached as exhibits to Appellants' motion to compel show that some responses were made, and documents were produced subject to the special appearances.[7]

---

[6] Appellants say that these responses were from MGE Venture I, LLC and that Appellees did "not address the deficiencies in failing to respond to the balance of Appellants' discovery requests."

[7] The record also shows that the discovery was not narrowly tailored to request information essential to the jurisdictional question. For example, Cantone was asked to produce *all* communications between him and the other

18

We are not asked, however, to resolve whether Appellees sufficiently responded to discovery, but whether the trial court erred in denying a continuance.

## B. Standard of review

We review denials of continuances for jurisdictional discovery for an abuse of discretion. *Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d at 676. Rule 120a allows for continuances to conduct discovery:

> Should it appear from the affidavits of a party opposing the [special appearance] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Tex. R. Civ. P. 120a(3). If a party does not request a continuance in the manner dictated by Rule 120a, the trial court does not abuse its discretion in denying a continuance. *Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407, 433–34 (Tex. App.—Houston [14th Dist.] 2014), aff'd sub nom. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58 (Tex. 2016).

## C. Analysis

Appellants' first and supplemental motions for continuance include affidavits of their counsel. The affidavits set out a summary of the facts of the case; assert that they served discovery requests on Cantone, Gillam, and Smith to which they have not responded; tried to meet and confer with Appellees about discovery; and noticed depositions of Cantone and Gillam which they quashed. Appellants also outlined the requests that they made to set their motion to compel for a hearing. The affidavits do not, however, state what information had already been produced in discovery, what additional discovery was needed, or as required by Rule 120a, why Appellants

Appellees between December 1, 2021, until the date of his response. Nonetheless, the responses indicate that subject to the objections and special appearance, documents were indeed produced.

"could not "present by affidavit facts essential to justify his opposition." Because the motion for continuance and supporting affidavit did not comply with Rule 120a(3), the trial court did not abuse its discretion in denying Appellants' request for continuance. *Tex. Bank & Tr. v. California Coast Credit Union*, No. 12-24-00149-CV, 2025 WL 657280, at *4 (Tex. App.—Tyler Feb. 28, 2025, no pet.) (mem. op.) (holding that trial court did not abuse its discretion in denying continuance when affidavit did not explain "how the discovery it seeks is necessary or relevant to establishing jurisdictional facts" or why it could not oppose the special appearance by affidavit); *Cimiano v. Halberstam*, No. 02-23-00127-CV, 2024 WL 2970847, at *5 (Tex. App.—Fort Worth June 13, 2024, no pet.) (mem. op.) (same).

We overrule Appellants' second issue.

## V. CONCLUSION

We reverse the trial court's order granting Gillam's special appearance as to his fraudulent representation claims. We affirm the trial court's order in all other respects.

MARIA SALAS MENDOZA, Chief Justice

August 13,2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

20